CALDWELL *et al.* *vs.* BARRETT *et al.*, commissioners.

1. For the legislature to submit to the vote of the qualified voters of a county whether a proposed local act, affecting such county, shall become of force therein, is not unconstitutional.

2. Where an act of the legislature was entitled "An act to prohibit the sale of spirituous or malt liquors or intoxicating bitters in the county of Pike, after submitting the same to the qualified voters of said county, to provide a penalty, and for other purposes," and the body of the act provided for the holding of the election, the notice to be given, the ballots to be cast, the qualification of voters, the manner of holding the election and of consolidating and declaring the result, and the penalties for a violation of the act, if the election should be determined in its favor, such an act did not contain matter in its body variant from or inconsistent with its title.

3. Neither did such act contain more than one subject-matter. The purpose of the act was to prohibit the sale of liquors in Pike county, if the qualified voters should so declare, and the provisions as to the election and the mode and manner in which it should be held and the vote should be ascertained and declared were germane to and grew out of the main object and purpose of the act.

4. Where the legislature provides for an election to determine the question of prohibiting the sale of liquors in a certain county, and no provision is made in the law for judicial interference, and there is no statute authorizing such interference, and no authority exists at common law, neither a court of law nor a court of equity has any power or jurisdiction over the matter, but the matters arising out of such elections must be determined alone by the tribunal constituted by the legislature for that purpose. The courts are powerless to interfere, unless the legislature shall see proper to confer such power on them.

November 11, 1884.

Constitutional Law. Elections. Laws. Courts. Before Judge STEWART. Pike County. At Chambers. August 15, 1884.

Reported in the decision.

J. F. REDDING; W. S. WHITAKER; THOS. R. MILLS; BOYNTON & HAMMOND, for plaintiffs in error.

A. A. MURPHEY; J. A. HUNT, for defendants

BLANDFORD, Justice.

On the 13th September, 1883, the general assembly of this state passed "an act to prohibit the sale of alcoholic, spirituous or malt liquors or intoxicating bitters in the county of Pike, after submitting the same to the qualified voters of said county, to provide a penalty, and for other purposes."

The first section provides for an election to be held on the third Wednesday in July, 1884, to determine whether intoxicating liquors or bitters shall any longer be sold in said county. The second section provides for notice of the election to be given by the commissioners of roads and revenues. By the third section, each voter is required to have written or printed on his ballot the words, "For the sale of liquor," or "Against the sale of liquor." The third section enacts that the qualification of the voters and the manner of conducting the election shall be the same as for members of the legislature, except that each voter is required to cast his vote in his own militia district, and the returns are to be made the first Tuesday thereafter to the commissioners of roads and revenues, who shall consolidate the vote and declare the result, and that the board of commissioners shall have authority to throw out any illegal votes cast at said election. The fifth section provided that, in case a majority of the votes cast at the election should have upon them the words,

"Against the sale of liquor," the act should go into effect the first of November, 1884; and on and after that day the sale of alcoholic, spirituous or malt liquors or intoxicating bitters was prohibited, and penalties were provided for a violation of the law.

An election was held under this law, and when the returns thereof had been made to the board of commissioners of roads and revenues, and while they were canvassing the ballots, preparatory to consolidating the same and declaring the result, this bill was filed by the plaintiff in error against the commissioners of roads and revenues, the defendants in error, to enjoin them from declaring the result of said election. The chancellor refused to grant the injunction, and the plaintiffs excepted and bring the case here for review.

It is insisted that the act of September 18, 1883, is unconstitutional and void:

(1.) Because the operation and effect of the act was made to depend upon the result of an election.

(2.) Because the body of the act contains matter different from its title.

(3.) Because the act contains more than one subject-matter.

1. Under the view which we take of the law of this case, the constitutionality of this act cannot be called in question under this bill, nor is it necessary to be decided to determine this case; but, inasmuch as great stress is laid upon this point by the able and distinguished counsel who have presented the case in behalf of the plaintiffs in error, we will devote some consideration to the question.

Under our form of government, where the people rule, and where the representatives in the legislature are but the agents of the people, and act alone for them, it would seem that, when the wishes of the people as to whether a proposed act should become a law can be clearly ascertained by an election, this mode would be consonant with the genius and form of our government. The funda-

Caldwell *et al. vs.* Barrett *et al.*, commissioners.

mental law of the state, and even particular sections thereof, is, and has been, left, to be determined by a vote of the people. If the constitution, the organic law of the state, has been made to depend upon the vote of the people, it is not easy to perceive why a local law, an act affecting a particular community, should not be determined by a vote of the people of that locality. It has been the practice in this state for more than half a century to leave local questions, such as the location of county sites, the building of public houses, municipal charters and amendments thereof, to the vote of the people to be affected thereby. Such laws have never been thought to be unconstitutional. See Cooley Const. Lim., 748, 749.

2. It needs but a glance at the act and the title thereof to determine that the body of the act contains no matter variant from or inconsistent with the title; this is all that is necessary to be said on this point.

3. The next point is, that the act contains more than one subject-matter. The act is to prohibit the sale of intoxicating liquors in Pike county, after submitting the same to the qualified voters of the county. There is but one purpose contained in the act, and that is that the sale of intoxicating liquors shall be forbidden in that county, if the qualified voters shall so declare, and the provisions as to the election and the mode and manner in which it shall be held, and the vote ascertained and declared, are germane to and grow out of the main object and purpose of the act, and are not different matter therefrom, but merely help and assist in carrying the main object and purpose of the legislature into effect. See *Hope et al. vs. Mayor, etc., of Gainesville,* decided at the last term of this court, where this question is fully considered and decided.

It was also suggested that the act violated a general law of force in regard to elections, and was for this reason unconstitutional.

We know of no general law of this state in regard to

elections of this kind. We may say that there is no such law. Hence the suggestion fails for want of a foundation.

4. There is no equity in complainant's bill. The subject-matter of the bill is clearly outside of the subject of equity jurisdiction. The matters set forth in the bill are of a political nature, not affecting property, and chancery has no jurisdiction of the same. High on Inj., 1258; Brightley's Digest of Elections, 617; 78 Ill., 261; High on Inj., 1250; 1 Tenn. Ch., 418.

Where the legislature provides for an election to determine a question of the kind set forth in the act of 1883, under which the election in this case was held, and there is no provision made in the law for judicial interference, and no authority exists at common law for the same, then neither a court of law nor equity has any power or jurisdiction over the matter, but the matters arising out of such elections must be determined alone by the tribunal constituted by the legislature for that purpose, and the courts are powerless to interfere, unless the legislature, in their wisdom, shall see proper to confer such power on the courts. This was intimated by this court to be the law in the case of *Tharpe vs. Hardison,* 69 *Ga.,* 283. Also in the case of *Skrine et al. vs. Jackson et al.,* decided at the present term of this court, this question was fully considered. It was made by the record in the case directly. The response of defendants to the order *nisi* prays "that this court will adjudicate and determine the legal effect of the action of the ordinary, as a courts elected by law under the constitution of this state, that the same is final and conclusive." . . . With this issue before us, we held in that case that, under the act of 1872, Code, §1449, known as the fence law, " that no provision is made by the act for any review of the decision of the ordinary, and that his decision was final and conclusive; that the common law remedy by *quo warranto* was not applicable to the case, nor is there any statute authorizing the courts to inquire into the legality of such an election." With that

decision we are entirely satisfied, and think that it adjudges and controls the present case.

It is unnecessary to say more. It follows that the decree of the chancellor refusing the injunction must be affirmed.

Judgment affirmed.