### HARRIS *et al. v.* PERRYMAN, ordinary.

The language, "The returns of said election shall be made to the ordinary of said county, who, after examining the same and deciding upon all questions which may arise out of said election, shall proclaim the result by notice as aforesaid," employed in sections 1777 and 1778 of the Political Code, relating to elections upon the question of "fence" or "no fence," does not authorize or provide for any contest before the ordinary as to the result of such an election ; and consequently he can not be by mandamus compelled to entertain or pass upon a contest with reference thereto, presented to him in the form of a petition by citizens and taxpayers.

Submitted February 25, — Decided April 1, 1898.

Petition for mandamus. Before Judge Sheffield. Early county. January 14, 1898.

*Donalson & Hawes* and *R. H. Sheffield*, by *Harrison & Bryan*, for plaintiffs. *R. H. Powell & Son*, for defendant.

Fish, J. Plaintiffs in error, as "citizens and freeholders" of the county of Early, residing in the 1140th militia district, pe-

titioned the judge of the superior courts of the Pataula circuit to grant a mandamus directed to the ordinary of that county, requiring him to "examine into, pass upon, and determine" the questions made by them in "a notice of contest" of "an election held in said district to determine the question whether or not the stock law should be adopted and put in force in that district." They alleged that, "when the returns of said election were made to the ordinary and before he had declared the result of or passed upon the same," they filed this notice of contest with him, and "he received and entertained the same and set the hearing of the contest" for a certain date, but subsequently, without notice to them and several days in advance of the time set for the hearing, he "wilfully and fraudulently pretended and undertook to declare the result of said election in favor of the stock law." Upon considering the petition, the judge refused to grant a rule nisi thereon, and plaintiffs in error excepted and assigned error upon the refusal to grant the rule.

The question presented for our consideration is, can the ordinary be by mandamus compelled to entertain and pass upon a contest with reference to the result of an election held for the purpose of determining whether the provisions of the stock law shall become operative in a particular militia district or not? Unless the law makes provision for contesting such an election and constitutes the ordinary a tribunal for the trial and determination of the contest, it is very clear that this question must be answered in the negative. It is entirely discretionary with the legislature whether or not it will provide a statutory method for contesting the result of an election; and unless it clearly appears that it has done so, such a method does not exist. The ordinary of a county certainly has no power to hear and determine the questions raised by a contest over an election, unless it has been conferred upon him by some statute of the State. The sections of the code which relate to elections on the fence question make no mention of a contest over the result of such an election. Both section 1777 and section 1778 of the Civil Code, the first providing "the terms and conditions" upon which the stock law shall become operative in a county, and the second "the terms and conditions" upon which it shall become opera-

52

tive in "any militia district," contain the provision that "the returns of said election shall be made to the ordinary of said county, who, after examining the same and deciding upon all questions which may arise out of said election, shall proclaim the result," etc.    It is upon this language that the plaintiffs in error base their contention that it was the duty of the ordinary to entertain and determine the questions which they sought to raise by their notice of contest.    If the legislature intended by this language to confer upon any one the right to contest an election of this kind and to make it the duty of the ordinary to hear and decide such a contest, it seems very strange, indeed, that none of the usual provisions in reference to contested elections are found in the sections of the code relating to these elec-  . tions.    How an issue shall be formed, who shall be necessary parties to it, what notice of the contest shall be given, upon whom and how long prior to the hearing it shall be served, before whom evidence shall be taken, the authority to examine suspected ballots, etc., are all questions upon which the law applicable to these elections is absolutely silent.

Besides this, all the duties which the statute imposes upon the ordinary in connection with these elections are such as would seem to precede a contest, if one were allowed.    For he examines the returns and decides all questions which may arise out of the election, *before* he proclaims the result of the election, and until the result is declared no contest can be instituted, — until then it is not legally known how the election went.    Stone, J., in delivering the opinion of the Supreme Court of Alabama, in Echols v. State, 56 Ala. 136, said :    " While, under the act 'to establish a new charter for the city of Opelika,' the city council are authorized to examine and count the votes; are made judges of the election, with full power to determine all matters in relation thereto, to ascertain the legality of voters, to reject illegal votes, to take testimony, examine witnesses, send for persons and papers, and to decide who are the legally elected mayor and aldermen of the city, yet there is nothing in the statute which gives to this proceeding the form, solemnity, or sanction of a contested election ; no provision for instituting any such investigation by any dissatisfied elector, and nothing

said about notice, or issue to be formed. This, as we understand the statute, is the primary count and reckoning of the ballots. None other is provided for by law. Until its result is announced, it can not be known who will, and who will not, be proclaimed elected; and hence it can not be known who will be aggrieved by the proclaimed result. Till then no contest can be instituted, for there is no ascertained result to contest."

As the alleged right to contest the election is based entirely upon the construction of the statute, and as a statutory right to make such a contest must be clearly conferred by the legislature before it can be said to exist, we do not think the plaintiffs in error make out their case when they exhibit, as the only foundation upon which they rest their alleged right, a statute which does not expressly authorize a contest and which contains no provisions whatever for setting in motion, or regulating, in any particular, such a proceeding. In the case of *Meadows* v. *Taylor*, 82 *Ga.* 738, this court held that "The statute providing for elections respecting fences and stock law in and for a single militia district, makes no provision for a counter-petition, or for any contest or hearing before the ordinary." This ruling would be decisive of the present case, were it not for the fact that the question whether or not the statute authorized a contest over the result of such an election was not directly involved in that case, the question which there invoked the ruling of the court being, whether or not the statute made provision for a counter-petition. But both the headnote and the opinion of the court, delivered by Chief Justice Bleckley, show that the learned Justices then composing this court placed the same construction upon the statute as that which leads us to hold that it does not authorize a contest over the result of an election held under its provisions. It follows that the judge was right in holding that mandamus would not lie to compel the ordinary to entertain and decide such a contest.

*Judgment affirmed. All concurring, except Cobb, J., absent.*