## GEORGIA RAILROAD AND BANKING COMPANY *v.* HUTCHINSON, tax-collector, *et al.*

1. The act approved August 23, 1905 (Acts of 1905, p. 425), entitled "An act to provide for the creation and operation of local tax district schools, for the levying and collection of local tax by counties for educational purposes, for the laying off of counties in school districts, and for other purposes," is not unconstitutional because of the proviso in the second section of the body of the act, whereby incorporated towns operating a public school system are not, without the consent of the municipal authorities, included in the election held in the county for the purpose of determining whether a school tax shall be levied. The subject-matter of the proviso is germane, and is not at variance with the title of the act.

2. The county authorities of any county adopting the provisions of this act may levy the tax authorized thereby upon the property of railroad companies, the assessment thereon being based on the returns made to the comptroller-general. The county authorities may obtain a certified copy of such returns from the comptroller-general on demand, to be used in the assessment and levy of the tax.

3. The tax-collector of the county may enforce the collection of the tax authorized by section 2 of the act, by execution issued by him.

4. The tax imposed under the act of 1905 was not intended to be retrospective in its application, and could not be lawfully collected for that year.

Argued May 23,—Decided July 2, 1906.

Petition for injunction. Before Judge Lewis. Hancock superior court. March 15, 1906.

In August, 1905, the General Assembly passed an act the title of which recited that its object was "to provide for the creation and operation of local tax district schools, for the levying and collection of local tax by counties for educational purposes, for the laying off of counties in school districts, and for other purposes." Acts of 1905, p. 425. On February 1, 1906, A. M. Hutchinson, as tax-collector of Hancock county, issued an execution against the Georgia Railroad and Banking Company, which operated a line of railway passing through that county, for "the sum of five hundred and ninety-five dollars, as its tax for the scholastic year of 1905

and 1906, due the County of Hancock for the use of the Board of
Education of Hancock County, and interest at seven per cent. per
annum from December 15th, 1905, the time of notice by A. M.
Hutchinson, tax-collector of Hancock county, to said railroad cor-
poration that said tax was due and unpaid under and by virtue" of
the above-mentioned act, approved August 23, 1905. This execu-
tion recited that a "tax of two mills on property value outside of
the corporate limits of the City of Sparta, and in said County of
Hancock," had been recommended by the Board of Education of
that county and levied by the Board of Commissioners of Roads
and Revenues of Hancock County, after an election regularly held,
the declared result of which was to authorize the levy of a local
tax for educational purposes; and that the Georgia Railroad and
Banking Company had failed to pay the assessment made under
this tax levy upon the Macon & Augusta Railroad, the property
value of which was $297,502. The execution was levied on a tract
of land on which the Georgia Railroad & Banking Company had
erected one of its depots, it being the owner of the Macon & Au-
gusta Railroad, and that company applied to the superior court
of Hancock county for an injunction to restrain a sale of the prop-
erty levied on. In its petition the plaintiff stated, on information
and belief, that the tax-collector, in fixing the amount of the taxable
property of the company, had considered all of its property in the
county of Hancock "except so much of said property as is situate
within the corporate limits of the town of Sparta," and had as-
sessed the tax accordingly. The authority of the tax-collector to
make this assessment was challenged on the ground that the tax
levied under the act of August 23, 1905, "is not a county tax, but
a tax for a fraction of the county of Hancock, and the act, so far
as it provides in the body thereof for a tax for a fractional part of
the county, is at variance with its caption," which does not provide
for the levy of such a tax, and the act is therefore unconstitutional
and inoperative. The plaintiff further asserted that the declared
policy of the State was that the assessment of railroad property
for taxation should be made by no official other than the comp-
troller-general, whether the tax levied be for the benefit of the
State or of a county or municipal corporation; that no other official
could make such assessment without express authorization by law
nor issue an execution for its enforcement, and that the tax-col-

lector of Hancock county had no authority to assess or collect the tax levied, either under the act aforesaid or by virtue of any other law; that no tax can lawfully be assessed on railroad property for county purposes except on a valuation thereof by the comptroller-general of the railroad property in the whole county and upon a certificate from him of the amount of the tax to be collected for the whole county, and he is without authority to make a valuation of the railroad property belonging to the plaintiff which is situate in that fraction of Hancock county which lies outside of the corporate limits of Sparta, or to give a certificate as to its valuation, as he has undertaken to do. The plaintiff stated its contention to be that the comptroller-general was not himself clothed with authority to levy and enforce by execution the tax assessed and sought to be collected by the tax-collector; and that the act of 1905 provided no machinery for levying and enforcing such a tax on railroad property, since that act did not provide for the return of railroad property for taxation by school districts or fractions of a county, or provide any means for ascertaining the amount of such property subject to taxation in any given school district or fractional part of the county. In no event, the plaintiff insisted, could this tax be collected for the year 1905, as the settled policy of the legislature was to pass its tax acts at least one year preceding the year for which the tax was collectible, and the act of 1905 did not authorize a departure from this uniform practice; furthermore, the execution against the plaintiff was issued for taxes for a period unknown to the laws of Georgia and not contemplated in its tax system, the period designated in the execution being "the scholastic year 1905 and 1906," and interest upon the principal of the tax being computed from December 15, 1905, instead of from December 20, the time fixed by the general tax laws for the commencement of interest upon unpaid tax assessments. As a further ground for enjoining the proposed sale of the property levied on, the plaintiff represented to the court that this property was used by the company in the discharge of its public duties as a common carrier, and even if the company should be held liable to pay the tax assessment against it and a sale should be necessary for the collection of the tax, "such sale should take place only in pursuance of a decree moulded for that purpose." The plaintiff named as defendants the tax-collector who issued the execution and the

sheriff who levied it. They filed an answer in which they admitted the issuance of the tax fi. fa. and the steps taken to enforce it, but in which they combated the contention of the plaintiff that the act of 1905 was inoperative, and denied that the execution had issued or was proceeding illegally. The defendants resisted the granting of an injunction on the grounds, (1) that the plaintiff did not allege it would suffer irreparable loss unless the enforcement of the execution was stayed, or allege insolvency or any other equitable reason for enjoining the collection of the tax, and (2) the plaintiff had an adequate remedy at law, and judicial interference could not be had with the enforcement by levy of the claim against it for taxes.

At the interlocutory hearing evidence was introduced by the defendants to show that after the board of county commissioners had fixed the tax rate, the tax-collector had received from the comptroller-general a certificate of the annual return made to him by the plaintiff railroad company for the year 1905, showing the valuation of its branch line known as the Macon & Augusta Railroad, and that the tax-collector had predicated his assessment upon this tax return, "deducting the value of its property in the corporate limits of the city of Sparta from the aggregate value of all of the property of said railroad company in said county" of Hancock. To the introduction in evidence of the certificate of the comptroller-general objection was made by the plaintiff, on the ground that "it was irrelevant, as not furnishing any basis, warranted by law, for the assessment and collection of the tax in question;" and objection was made to the evidence showing how the tax-collector had made the assessment on the company's property, because, as the plaintiff insisted, this evidence disclosed that the tax-collector "had proceeded to assess and levy the tax in question in a manner not prescribed by law, and had used machinery not furnished by law, but of his own devising, for the collection of said tax." These objections to evidence were overruled by the presiding judge, who, after hearing the contentions of the respective parties, refused to grant the injunction, and the plaintiff excepted.

*Joseph B. & Bryan Cumming* and *W. H. Burwell,* for plaintiff.

*Seaborn Reese,* for defendants.

EVANS, J. (After stating the facts.) 1. The act approved August 23, 1905, entitled "An act to provide for the creation and

operation of local tax district schools, for the levying and collection of local tax by counties for educational purposes, for the laying off of counties in school districts, and for other purposes," is alleged to be opposed to art. 3, sec. 7, par. 8, of the constitution, in that the subject-matter of the body of the act is at variance with its title. The particular complaint made of that act is that its caption provides for the levying and collection of a local tax by counties for educational purposes, whereas the body of the act provides for the levying and collection of a tax for a fractional part of a county. Section 2 of the act is as follows: Whenever "the citizens of any county wish to supplement the public school fund received from the State by levying a tax upon the property of the county, it shall be the duty of the ordinary to order an election not earlier than twenty days nor later than sixty days after receiving a petition from one-fourth of the qualified voters of the county; and notice of the same shall be published in at least three weekly issues of the county newspaper in which the legal advertisements for the county are published. Said election shall be held as ordinary county elections are held. Those favoring the levying of the local tax shall vote, 'For local tax for public schools;' those opposed shall vote, 'Against local tax for public schools.' The returns of said election shall be made to the ordinary of the county, who shall declare the result, and two thirds of those voting shall be necessary to carry said election for local taxation for public schools. An election for the same purpose shall not be held oftener than every twelve months. No person shall be allowed to vote in said election except those regularly qualified to vote in State or county elections. If the election is carried for local taxation, the ordinary or board of county commissioners, whichever levies the county tax, shall levy a local tax as recommended by the county board of education upon all the property of the county, not to exceed one half of one per cent., and the same shall be collected by the county tax-collector and paid by him to the county board of education. The county tax-collector shall keep the funds thus collected separate and distinct from all county and State funds; provided, that if there be an incorporated town in a county holding an election as provided in this section now operating a public-school system, it shall not be included in the election without the consent of the municipal authorities, but if the municipal authorities should so wish, they may abolish their

system by special act of the Legislature, and avail themselves of the provisions of this bill." The general scheme of the act, so far as the same relates to counties, is to provide for the collection of a tax for educational purposes levied upon the taxable property of the entire county in those counties which do not contain an incorporated town operating a public-school system, and in counties having an incorporated town operating a public school system the collection of a tax levied on the taxable property of the county exclusive of such as is located in such towns. The proviso excepting incorporated towns having a public-school system from the operation of the act, until such towns take the proper steps to abolish their local systems, does not relate to a subject different from that expressed in the title. The caption of the act is comprehensive enough to include both schemes of taxation, as expressed in the second section of the act, and is not unconstitutional for the reason alleged. See *Georgia R. Co.* v. *Wright,* 124 *Ga.* 608.

2. It is urged that the act, so far as relates to the assessment and levy of the tax under section 2, is incapable of enforcement, because the legislature omitted to provide any machinery for its collection. The alleged defects are specifically pointed out in the petition, and appear in the summary of facts. In the first place, we will consider whether the school taxation act is defective because no special provision is made for the return of property subject to taxation to any particular officer. It should be borne in mind that the legislative purpose to tax all property is clearly expressed. The tax is imposed on all property liable to taxation; not only on the property of taxpayers who make return of their property to the tax-receiver, but also upon the property of railroads, which is returned to the comptroller-general. It is true that no reference is made in the act to railroads or the property of railway companies, but the language of the act is so broad and comprehensive that it will not admit of doubt that the tax thereby imposed is to be assessed, levied, and collected of every species of property within the territory of the taxing district. There is not the slightest intimation that any property is to be exempted and excluded from the tax which might be levied. We therefore assume the legislative purpose to be to impose the tax upon railroad property as well as upon the private property of individuals and other corporations. Our tax laws contemplate the return for taxation of all property subject

to taxation. Two methods are provided: railroad, insurance, and express companies, through their proper officers, make return of their property to the comptroller-general, and individuals and other corporations return their property to the tax-receiver of the county. The return of a railroad company contains detailed information which enables the comptroller-general to assess the value of its property in the county, and also the value of its property in each and every incorporated town and city in the county or counties traversed by its line of railway. By the simple mathematical process of subtraction, the value of a railway company's property in a county lying outside of an incorporated town is capable of exact ascertainment. This value has been fixed either by the railway company in its return or (in case of disagreement between the railroad officials and the comptroller-general) by statutory arbitration. In either event, the value of the property has been fixed in a manner prescribed by law and after the railway company has had an opportunity to be heard.

The question then presents itself: can resort be had to this return in levying the school tax, without express authority in the act providing for the imposition of a school tax? We think this question should be answered in the affirmative. The primary consideration in the collection of a lawful tax is that the taxpayer has been accorded an opportunity to return his property which is liable to the tax, so that he may be heard in fixing the correct valuation on the same. If provision is already made by law for a return wherein the valuation is fixed, the taxpayer can not justly complain of the levy of a lawful tax upon his property as thus assessed. It then remains to determine whether the county authorities, without express direction and authority, may avail themselves of the information contained in this return in making the levy and enforcing the collection of the tax under the school act under consideration. As has been pointed out, no injustice or wrong could be done to the railroad company in the levy of the tax on the assessed value of its property in the return made to the comptroller-general. This return is made solely for the purpose of assessing the value for the levying and collection of taxes. Indeed, the object of every return by a taxpayer, whether to the county tax-receiver or to the comptroller-general, is to fix the valuation of the property so that the tax laid thereon may be levied and collected.

This being the only purpose of a return, when a new and additional tax is imposed by legislative authority, it would seem to be supererogation to require a new and additional return of the same information already available under existing law. Without express direction, the tax could be assessed on the return made to the comptroller-general. The authorities charged with the duty of levying the tax may require of the comptroller-general a certified copy "of any papers kept in his office." Political Code, §214. And upon a certified copy of a railway company's return of its property for taxation (wherefrom can be ascertained with mathematical exactness the value of its property in a county, exclusive of such as is located in incorporated towns) the county authorities may levy and cause to be collected the school tax. If the railroad company be in default because of its neglect or refusal to make a return of its property to the comptroller-general, the law gives that official plenary power to assess its property; and in the event of a default in making its return, the assessment laid upon its property by the comptroller-general may likewise be looked to and used by the county authorities in the collection of the school tax. While it is a general rule that tax laws must be strictly construed against the sovereign and in favor of the subject, as to the imposition of the tax, yet laws pertaining to the remedy to be pursued in its collection, being remedial in their nature, are not to be so strictly interpreted. Thus, the act of 1872, entitled "an act to regulate public instruction in the county of Richmond," conferred upon the county board of education the power to levy a tax for school purposes, and devolved upon the county commissioner the duty "to make out an assessment and return of such tax against all the legal taxpayers in the county, and furnish a copy of said assessment and return to the county tax-collector, whose duty it shall be to collect the said tax." This court held that an assessment by taking the returns of the county tax-receiver and assessing upon property as therein returned the per cent. laid by the board of education was a legitimate and fair mode of procedure, and in substantial compliance with the requirements of that act. *Smith* v. *Bohler,* 72 *Ga.* 546. We conclude, therefore, that the county authorities of any county adopting the provisions of the act approved August 23, 1905, may levy the tax authorized by that act upon the property of railroad companies, based on the returns made to the comptroller-general.

3. It is further insisted that neither the school tax act nor the general law empowers the tax-collector to issue an execution for the tax. The county tax-collector is the officer charged by law with the duty of collecting and paying over the State and county taxes to the comptroller-general and the county treasurer, respectively; of issuing executions against all defaulters and insolvents, and placing them with the proper officer for enforcement; and of performing all other duties that the law requires and which necessarily under the law appertain to his office. Political Code, § 949. The act of 1905 makes it the duty of the tax-collector to collect the tax imposed under section 2 of that act. Whenever the duty is imposed on a tax-collector to collect a tax, that officer, by necessary implication, has the power to issue his process to compel the enforcement of the tax by levy on the property of the delinquent taxpayer. *Gladney* v. *Deavors,* 11 *Ga.* 79. But it is not essential to depend entirely on this necessary implication of power as authority for the tax-collector to issue an execution for the school tax. The Political Code, § 894, provides that: "Executions for non-payment of taxes against persons who are not required to pay to the treasurer are issued by the tax-collectors of their respective counties as soon as the last day of payment has arrived, and must be directed to all and singular the sheriffs and constables of this State." This school tax is not required to be paid by the taxpayer to the treasurer, but to the tax-collector. Indeed the fund thus raised, when collected by the tax-collector, is not to be paid over by him to the treasurer, but to the county board of education. Clearly, the power resides in the tax-collector to enforce the collection of this tax by process issued by him, unless under the general law the power to issue an execution against a railroad company is delegated exclusively to the comptroller-general. The statutes expressly confer on the comptroller-general the power to issue tax executions against railroad companies in three instances only: for the State tax, for the customary county tax, and for the municipal tax. If that part of a county embracing a municipality be excepted, then the tax is not imposed on the county as a whole, but on only a fractional part thereof, and the tax is not a county tax in the sense of the statute which empowers the comptroller-general to issue an execution for the enforcement of a county tax. In those counties of the State falling without the proviso of the act of 1905, the tax

is imposed upon the entire county; but even in those counties, the comptroller-general would be without authority to issue an execution against a defaulting railroad company. This is true for the reason that the act of 1905 contemplates that this school tax shall be separate and distinct from the county tax, and that the fund raised thereby shall be controlled and disbursed separately and differently from the manner in which county funds are kept and expended. This object could not be attained if the comptroller-general issued the fi. fa., because he is empowered to issue only one fi. fa., and that would confuse and mingle the fund produced from this special tax with the general county funds. Nor is there any objection to the tax-collector issuing the fi. fa. on the ground of duality of tax-gatherers. The legislature is left free by the constitution to provide the method of collecting lawfully imposed taxes. It may provide methods which greatly mar the general symmetry of the tax laws, and design a tax-enforcing scheme for a particular purpose which is out of harmony with the customary manner of collecting taxes, so long as there is no constitutional inhibition. Thus, at one time the General Assembly empowered the tax-receiver to issue a tax fi. fa. against unreturned wild land, instead of conferring this power upon the tax-collector, and the tax-receiver's process was upheld as legal. *Barnes* v. *Carter,* 120 Ga. 895. Another instance of departure from symmetry is the power given to tax-collectors in counties of a certain population to levy their own process. Such matters are for legislative discretion; and if that branch of the government deems it fit by a general law to confer on different officials the power to enforce the payment of different taxes imposed on the taxpayer, the procedure is legal if the tax is legal and has been assessed according to law.

4. The tax imposed under the act of 1905 was not intended to be retrospective in its application. The general policy of this State with reference to the enactment of its revenue laws is to fix the rate of taxation in advance of the year of its collection. The railroad company had made its return to the comptroller-general pursuant to law before the enactment of this law for the levying and collection of a school tax. The law required the railroad to make its return on or before the first day of May. Political Code, §784. This act was approved August 23, 1905, and became effective in Hancock county by force of an election held in that county at a

later period. No tax could be levied and collected for the year 1905. Says Judge Cooley, "There is commonly a presumption that any new tax law was not intended to reach back and take for its standard of apportionment a state of things that may no longer be in existence. 'New burdens,' it is very justly said, 'ought always to be prospective,' and it is reasonable tó supposc the legislature has intended that they should be. Such a supposition is in harmony with the general rule of law which requires that the courts 'always construe statutes as prospective and not retrospective, unless constrained to the contrary course by the rigor of the phraseology.'" 1 Cooley on Tax. (3d ed.) 494-495. The tax-collector was without authority of law to collect any tax for the year 1905, and hence could not legally issue an execution against a taxpayer for non-payment of a tax for that year. As the tax-collector had no authority to issue the tax fi. fa. sought to be enjoined, it is unnecessary to pass on other questions made in the record not previously discussed.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*