## COLEMAN *et al. v.* BOARD OF EDUCATION OF EMANUEL COUNTY *et al.*

1. The act approved August 21, 1906 (Acts 1906, p. 61), amending the act approved August 23, 1905 (Acts 1905, p. 425), is not unconstitutional on the ground that the provision in the body of the act for the levy of a "local tax for public schools" is unauthorized by the caption of the act, which describes the tax to be levied as a "local tax . . for educational purposes."

2. The act referred to in the first headnote is not violative of art. 7, sec. I, par. 1, and art. 7, sec. 6, par. 2, and art. 8, sec. 1, par. 1, of the constitution of the State of Georgia, as embodied in the Civil Code, §§ 5882, 5892, 5906, because the act fails to specify on its face that the local tax assessed for educational purposes shall be used for the instruction

of children in the elementary branches of an English education; nor because the act fails to provide on its face that the schools shall be free to all children alike; nor because the act fails to specify that the schools for the white and colored races shall be separate. With reference to these matters and details in the conduct of schools and application of the money raised by taxation, the act referred to will be construed in connection with existing laws.

3. Nor does the act referred to in the first headnote violate art. 7, sec. 2, par. 2, of the constitution of Georgia, as embraced in the Civil Code, § 5884, because the act recites that the tax will be imposed upon "all the property of the county," without making any express provision for the exemption of certain classes of property, which, under the Political Code, §§ 762, 763, are exempted. The act is to be construed in connection with those sections of the code, and not as repealing them.

4. Nor does the failure of the act in question to provide expressly for contesting an election authorized to be held thereunder, before the law becomes effective in a given community, by any person, or for "having his rights or interests thereunder inquired into or passed upon," render the act obnoxious to art. 1, sec. 1, par. 3, of the constitution of the State of Georgia, nor to art. 5 of amendments to the constitution of the United States (Civil Code, §§ 5700, 6018), declaring that no person shall be deprived of his property except by due process of law, nor to art. 14, par. 1, of amendments to the constitution of the United States (Civil Code, § 6030), declaring that no State shall deprive any person of life, liberty, or property without due process of law.

5. As a general rule courts of equity will not deal with contests of elections. But where a statute authorized a tax on property, and provided that the law should become operative in any county or school district only on condition that, at an election to be held for the purpose, the requisite vote should favor the law being made applicable, if, after a pretended election, the levy of a tax on the property of a taxpayer is attempted, equity will, upon appropriate allegations in a petition of the taxpayer, inquire into the validity of the election.

6. The legislature has power to enact a law which shall become effective in a particular county or district upon a vote of the people thereof at an election.

7. The petition to the ordinary, involved in this case, considered as a whole, was for a county election, and the order for a county election was not void on the ground that it was based on a petition for a district election.

8. Upon the contention that the returns from certain precincts should have been excluded on the ground that the election therein was held at other places than at the lawfully established precincts, the evidence authorized the decision of the presiding judge against such contention.

9. That the registrars, because of lack of sufficient time before the election, failed to purge the registration lists, but furnished to the election managers unpurged lists, except at one precinct, where no list was furnished; and that the superintendents of election failed to consolidate the returns from the several precincts promptly at noon on the day next succeeding the election, and received returns from a precinct which did

not arrive until two o'clock, and received returns which had been sent by mail to the ordinary and by him opened and delivered to the superintendents, are irregularities resulting from a failure to observe statutory provisions which are merely directory, and, in the absence of any fraud or evidence that persons had voted who were not authorized to vote, or had been deprived of voting who were entitled to vote, and that such votes would have changed the result of the election, will not be sufficient cause to set aside the entire election.

10. Upon the whole case the presiding judge did not err in refusing to grant the interlocutory injunction prayed for.

Argued May 21,—Decided December 1, 1908.

Petition for injunction. Before Judge Rawlings. Emanuel superior court. January 11, 1908.

Coleman and others, as citizens and taxpayers of the County of Emanuel, on behalf of themselves and all other citizens occupying a similar position, filed their equitable petition against the members of the Board of Education and also the Commissioners of Roads and Revenues, for the purpose of enjoining the assessment and collection of a local tax in that county for educational purposes. The act of 1905 (Acts 1905, p. 425), as amended by the act of 1906 (Acts 1906, p. 61), under which the election was held, was attacked as unconstitutional on numerous grounds, and the election held under it was also attacked as invalid for various reasons. Upon the hearing the presiding judge refused to grant an interlocutory injunction, and the plaintiffs excepted.

*Saffold & Larsen,* for plaintiffs.

*R. L. Gamble,* for defendants.

ATKINSON, J. Several previous attacks have been made upon the constitutionality of the act of 1905 as originally passed, and also as amended by the act of 1906. See *Ga. R. Co.* v. *Hutchinson,* 125 *Ga.* 762 (54 S. E. 725); *Brown* v. *So. Ry. Co.,* 125 *Ga.* 772 (54 S. E. 729); *Edalgo* v. *So. Ry. Co.,* 129 *Ga.* 258 (58 S. E. 846). So far this legislation has withstood the attacks made upon it, except as to a part of the act of 1905 before its amendment; and the validity of the amended act is now again vigorously attacked on the ground that it is unconstitutional.

1. It is contended that the act contains matter in its body which is not covered by the caption, because in the caption the language used is: (a) "local tax for educational purposes," while in the body of the act language is used referring to (a) "local tax

for public .schools." Public schools. are instrumentalities for educational purposes. If the provision in regard to the manner of voting in the election, in the use of the words "public schools," when considered in connection with the immediate context, varies at all from the caption, it is not broader than the caption, but narrower. The body of the act in this respect does not contain matter not covered by the caption, but rather language which is overlapped and more than covered by the caption. There is no law which makes an act unconstitutional because language employed in the body of the act is not as broad as might be warranted by the caption. *Plumb* v. *Christie*, 103 *Ga.* 700 (30 S. E. 759, 42 L. R. A. 181).

2. It is urged that the act is violative of the constitutional provisions embodied in the Civil Code, §§ 5882, 5892, 5906, because it fails to specify on its face that the local tax assessed for educational purposes shall be used for the instruction of children in the elementary branches of an English education, which is the kind of education within the purview of the constitutional provisions cited, and because it fails to provide on its face that the schools shall be free to all children alike, or that there shall be separate schools for the white and colored races. The act providing for the holding of local elections, and, upon a favorable result thereof, the imposition of a local educational tax, is not void because it does not provide for the details of the application of the fund, being passed to carry into effect the constitutional amendment adopted in 1903, and in connection with the school laws of the State, which already cover the subjects referred to, and dealing with the general school system of the State as already established. The act is not void because it does not enter into details as to the manner of conducting public schools, or the use of the fund arising from the taxes which will be assessed. If the fund be rightly raised, but officers charged with its administration should proceed to make a wrongful use or application thereof, it will then be time to complain.

3. Again it is said that the act conflicts with the constitutional provision contained in the Civil Code, § 5884, because certain property is by that provision permitted to be exempted from taxation, and that certain property has by the legislature been exempted from .taxation accordingly (Political Code, §§ 762, 763), and this

act declares that a tax shall be levied on "all the property" in the county, without mentioning that which has thus been exempted. But where, under express constitutional provision and legislative action in pursuance thereof, certain property has been lawfully exempted from taxation permanently, the omission in this act to specifically mention such exemptions will not render it void. The purpose of the act considered as a whole is not to increase or diminish the subjects of taxation, but to provide for local taxation for educational purposes to be assessed upon the same property as that subject to other taxation, after the provisions of the act have become of force in the locality under an election. It has been held that the tax digests and the returns to the comptroller-general can be looked to in determining the property subject to this tax (*Ga. R. Co.* v. *Hutchinson,* supra), and they do not include exempted property. Construing this act in connection with the general tax laws of the State, the ground now urged is without merit. The act did not seek to repeal sections 762 and 763 of the Political Code by implication, without referring to them. On the contrary, it is to be construed in connection with them.

4. The plaintiffs in error contend that the act is in conflict with the provision of the constitution of this State, declaring that no person shall be deprived of his property except by due process of law (Civil Code, §§ 5700, 6018) and that of the United States declaring that no State shall deprive any person of life, liberty, or property without due process of law (Civil Code, § 6030). The contention is that the act under consideration deprives the plaintiffs of their property without due process of law, because no provision is made by its terms for contesting the election by any person, "or having his rights or interests thereunder inquired into or passed upon." It may be noted that there is a difference between the power of a court to declare an act unconstitutional, if it is in violation of any provision of the fundamental law, and the necessity for reciting such a power on the face of the act itself. It is not generally necessary that an act should recite that the courts may inquire whether it was lawfully passed, or whether it is in accord with the constitution of the State. The power to test the act by a comparison with the constitution is one inherently residing in the courts, and it is unnecessary for the act itself to recite such power. So far, therefore, as any question of constitu-

tionality of the act itself, or of the provisions for holding an election by virtue of it, are concerned, it needs no recital of authority on the part of the courts to deal with the subject-matter. If the tax sought to be assessed is without constitutional authority, it is no tax in law, and the courts can so declare. Civil Code, §5733.

5. Counsel for defendants in error contended that this was in effect a proceeding to contest an election; that such a contest was matter pertaining to the political department of the government, rather than to the judicial department, and that a court of equity has no inherent power to determine a contest of an election, but only such authority as may be conferred by statute. On this subject he cited *Caldwell* v. *Barrett,* 73 *Ga.* 604; *Tupper* v. *Dart,* 104 *Ga.* 179 (30 S. E. 624) ; *Ivey* v. *City of Rome,* 129 *Ga.* 289 (58 S. E. 852). He also contended that the declaration, by the ordinary, of the result of the election was ministerial, but conclusive, and that the courts can not go behind it; and on this subject he cited: *Skrine* v. *Jackson,* 73 *Ga.* 377; *Meadows* v. *Taylor,* 82 *Ga.* 738 (10 S. E. 204) ; *Harris* v. *Perryman,* 103 *Ga.* 819 (30 S. E. 663) ; *Harris* v. *Sheffield,* 128 *Ga.* 299 (57 S. E. 305). The general proposition that the courts of equity do not deal with contests of elections is quite true. In matters touching the exercise of political functions, the method of determining the result of an election pointed out by the legislature is ordinarily the one to be followed; and if the lawmaking power has expressly provided in an act a mode of contesting an election, that method should be pursued. Whether a claimant of an office has such a property right or interest in the office and its emoluments and rights as gives him a remedy by quo warranto, without concluding him to contesting the election, is not here involved. The question presented in the case before us is of a different character. It is not a contest of an election. The legislature has provided for the imposition of a tax upon property and has declared that the law should become operative in a county or district when put in force by an election called in a certain manner, and determined by a certain majority of voters. A person against whose property such a tax is assessed and sought to be enforced can raise the question of whether there is any lawful authority for such assessment and enforcement. He may attack the constitutionality of the act; and if such an attack is successful, there is no authority in law for assessing the tax, and

hence none can be lawfully assessed. The legislature has not directly declared that the educational tax shall be imposed upon all counties. It has only provided for such imposition upon condition that an election is held, and that two thirds of those voting in a county election shall cast their ballots in favor of the local taxation. Acts 1906, p. 68, sec. 3. Where the local authorities seek to assess and enforce a tax against property, the property owner may contest their authority to do so, on the ground that the act has not become applicable in the county, and that therefore his property can not be subjected to the tax. In Pickett v. Russell, 42 Fla. 116 (28 So. 764), it was held that "Equity has jurisdiction to enjoin the assessment and collection of an illegal tax levied upon real estate, which, if assessed or collected, will cast a cloud over the title to such real estate; and where such levy to be valid must be authorized by the result of an election previously held, the court of equity has jurisdiction, in the absence of other remedies at law, to inquire into the validity of such election in so far as the authority [to] levy and collect the tax is derived therefrom." In Union Pacific Ry. Co. v. Cheyenne, 113 U. S. 516, 525 (5 Sup. Ct. 600, 28 L. ed. 1098), in the opinion of Mr. Justice Bradley it was said: "Even the cloud cast upon his title by a tax under which a sale could be made would be a grievance which would entitle him to go into a court of equity for relief." See also Ogden City v. Armstrong, 168 U. S. 224 (18 Sup. Ct. 98, 42 L. ed. 444); Mayor of Macon v. Hughes, 110 Ga. 795 (36 S. E. 247).

In this case the act makes no provision for any method of contesting the election at law or the question of whether the legislative provisions in regard to the local educational tax have gone into effect legally in any given county. When, therefore, it is sought to assess and enforce such a tax against the property, the owner thereof has a right to call in question the authority under which the local officers are proceeding and to say that the law is void or the election is invalid. We do not mean to say that every irregularity or failure to comply strictly with directory provisions of the law will invalidate such an election and render its result of no force as an authority to the officers to proceed; but we do mean that if the election or attempted election was such as to be unlawful and to confer no valid authority upon the local officials to proceed to assess and collect the tax, the property owner could set

up and establish that fact and could prevent the title to his property from being beclouded with an unlawful assessment and seizure. In *Caldwell* v. *Barrett,* supra, the question arose under an election to determine the question of prohibiting the sale of liquors in a certain county, and the act provided the manner in which the election should be held and the vote should be ascertained, and gave authority to the county commissioners to throw out any illegal vote. In *Skrine* v. *Jackson,* supra, the election involved was on the question of "fence or no fence," in a certain county, and the act of the legislature under which it was held provided that the returns of the election should be made to the ordinary, "who is required to examine the same, and to decide upon all questions which may arise out of said election, and he shall proclaim the result." In *Meadows* v. *Taylor,* supra, the election involved was again in regard to fences and stock law. The question there involved was also whether, where a petition had been filed with the ordinary to call an election, a counter-petition could be filed and a hearing had by the ordinary, or whether the duty of that officer in regard to calling an election upon a proper petition therefor was ministerial. In *Harris* v. *Perryman,* supra, the question was again raised in regard to an election whether or not the stock law should be adopted and put in force in a certain district. *Hillsman* v. *Harris,* 84 *Ga.* 432 (11 S. E. 400), involved the changing of the lines of a militia district. *Meadows* v. *Taylor,* 86 *Ga.* 804 (13 S. E. 155), grew out of the same stock law election as that involved in 82 *Ga.* 738, supra. *Harris* v. *Sheffield,* supra, arose under a contest provided by statute in cases of local option elections in regard to the sale of intoxicating liquors, and involved a construction of the section of the code touching such a contest. *Ivey* v. *City of Rome,* supra, involved an election to determine the question as to whether the territory of one municipality should be annexed to the territory of another. It will be observed that all of these and similar cases differed in one material respect from that at bar. While indirect benefits or injuries might accrue as a result of such elections, none of them directly imposed a tax upon property or made a tax applicable thereto.

Moreover, there is another cogent ground for the distinction between this case and others cited above. This is not purely a legislative matter. The legislature could not have passed an act di-

rectly imposing this educational .tax, without more. The amendment to the constitution proposed by the legislature in 1903, and ratified by the people, declared that no such law shall take effect until the same shall have been submitted to a vote of the qualified voters in each county, militia district, school district, or municipal corporation, and approved by a two-thirds majority of persons voting at such election, and the General Assembly may prescribe who shall vote on such questions. The constitution itself requires the election and the carrying of the measure by a specified majority as a condition precedent to the levy of the tax, and the legislature was given power to make provision as to the conduct of the election. In the law which the General Assembly has passed, no provision has been made for contest or determination of any question, but only for the declaration of the result by the ordinary. The result of the election is not merely to determine some political matter or policy, but directly to impose a tax. We appreciate the difficulties which may possibly arise from the absence of any provision for a mode of contesting the election, or determining any question as to it, before the direct burden of a tax is placed upon property. But that is matter for legislative discretion and action, and is not for the courts. While the law stands as it is, we must hold that the property owner can be heard, not as on a contest properly speaking, but to question whether the officers seeking to levy a tax on his property have authority to do so by virtue of an election carried by the constitutional majority.

In some States there are constitutional provisions in regard to elections for removal of county seats, somewhat like the constitutional amendment above referred to; and in those States there have been rulings similar to that now made. See, on the general subject, Gibson v. Board of Supervisors, 80 Cal. 359 (22 Pac. 225) ; Cattell v. Lowry, 45 Iowa, 478; People v. Wiant, 48 Ill. 263.

Where officers are proceeding with apparent regularity under color of law, and their authority to assess and collect a tax is attacked by a property owner, the burden is upon him to show such lack of authority; and this is true whether he claims the lack of authority to arise from an unconstitutionality of the law, or because the attempted election was so abortive in character as not to make the law applicable to the locality and therefore not serviceable as authority for levying and collecting the tax.

6. It was urged that the legislature did not directly impose this tax, but authorized a submission to the people, at an election, of the question of whether it should be imposed in any particular county or district, and that the act was therefore invalid. But it is well established that the legislature has power to enact a law which shall become effective in a particular county or district upon a vote of the people thereof at an election. *Caldwell* v. *Barrett,* 73 *Ga.* 604; *Mayor of Brunswick* v. *Finney,* 54 *Ga.* 317 (6); Cooley's Con. Lim. (7th ed.) 163 et seq.

7. The plaintiffs in error further maintained that the petition which was presented to the ordinary was to hold a district election under section 4 of the act of 1905 as amended by that of 1906, while the order of the ordinary was for a county election, and hence that the election held thereunder was void. The petition presented to the ordinary, when considered as a whole, shows that it was for a county election. It recited, that it was made by the voters of the County of Emanuel; that there was no local tax for educational purposes in that county; that one was desired; and that one fourth of the voters of the county made the application, and prayed an election to be held under the act of 1905 as amended by that of 1906, referring to the whole act by volume and pages of the published laws. It is true that the petition adds: "Said election to be ordered and held in accordance with the provisions of said act as amended, and especially the provisions of section 4; said act to be found in public acts of 1906, pp. 61 et seq." Section 4 of the amended act has reference to district elections; but it is evident from the whole petition, which was not by voters of a district and asked for no district election, that the number of the section mentioned was a mere inadvertence or clerical mistake. The petition in its entirety was for a county election.

8. It was contended by the plaintiffs that in certain districts the election was not held at the proper precincts. The orders establishing the various precincts were not introduced, except in one instance where an order for an election in a district several years previously referred to the place in that district where the election would be held. Evidence was introduced pro and con as to the places where the election had been ordinarily held in different districts. Some of it, by which the plaintiffs sought to show that the election was held at places other than the regular pre-

cincts, or to locate such precincts, referred to dates quite long past. Thus one witness stated his knowledge of where elections were held in a district "as late as" 1878, and another "as late as" 1880. The election under consideration was held in 1907. The allegations on this subject were denied by the answer, and, under the evidence, there was no error on the part of the presiding judge in denying an injunction on that ground. It was not shown that the election was void, or that the officers were wrongfully proceeding under it so as to require an injunction for that reason. In one case the house in which elections had been held in a certain district appeared to have been destroyed by fire, and the election was held in another house near by in full view. There was no evidence that any voters were ignorant of the place where the election was held, or were misled or failed to vote on account of the irregularity, if there was any in this respect.

9. The plaintiffs allege that the registration lists furnished by the registrars were copied from the book prepared for a white primary election, and in the 53d district of the county there were no lists furnished at all, but the election managers used the voters' book, which had never been purged. It was admitted by the defendants that no list of registered voters was furnished the managers in the 53d district; but it was contended that every citizen qualified to vote had full opportunity to do so, that no qualified person was deprived of that privilege by reason of any of the matters complained of, and that the vote was honestly and correctly consolidated and the result was legally and properly declared. It appears that in the 53d district 125 votes were cast in favor of the local school tax and 138 against it; so that if the returns from that district were to be thrown out altogether, it would not benefit these plaintiffs. Certainly such an irregularity would not show that the election would have resulted otherwise than it did had the list been regularly made, or that the entire election was void.

Evidence was introduced by the plaintiffs to show that the time which elapsed after the board of registrars of the county received notice of the election to be held on July 10, 1907, was so short that they did not have time to prepare and purge the registration lists of the county; that the tax-collector, clerk, and ordinary furnished no list of tax defaulters, and that therefore no registration lists were made up by the board of registrars by purging the list

as provided by law. The election was called on June 20, to be held on July 10. It did not appear that the registrars did not furnish lists, with the exception referred to above; but the contention was that the lists were not made up and purged as the law directed. This was an irregularity, a grave one; and while the time was short, it would seem that by diligence and industry perfected lists might have been made. But these plaintiffs carry the burden of showing that the election held did not confer authority upon the local officers to assess and collect the tax as already stated. It does not appear that any unqualified voters participated in the election, or that any persons whose names should have been stricken off of the list voted, or that the election would have resulted otherwise had this irregularity not taken place. While we do not mean to approve of irregular registration lists or irregular modes of conducting an election, we can not say that the omission here referred to was such as to invalidate the entire election and authorize the plaintiffs to treat it as a nullity or as conferring no power on the local officers to act under the due declaration of the result. On the subject of irregularities in regard to registration lists, see *Chamblee* v. *Davis,* 115 *Ga.* 267 (41 S. E. 691) ; *Mayor of Madison* v. *Wade,* 88 *Ga.* 699 (3), (16 S. E. 21); Pickett *v.* Russell, 42 Fla. 116 (28 So. 764) ; Nicholls' case, C. S. & J. 213; Newcomb *v.* Holmes, L. & R. 57; Finley *v.* Walls, Smith, 367; Bell *v.* Snyder, Id. 247; Paine on Elec. §§356, 363; Throop on Pub. Off. §138.

It was still further urged, that, when the superintendents of the precincts assembled at the county site to consolidate the vote at noon on the next day after the election, the returns from one district had not arrived, and that they did not reach the consolidators until two o'clock, but, upon arriving before the consolidation had been completed, they were included in it. In another district of the county the returns were not sent for consolidation by one of the superintendents of the election, but by a letter sent to the ordinary, which he opened and delivered to the consolidators, and the votes were included in making up the consolidated returns. It was urged, that these irregularities in the returns should have excluded the votes in those districts from being considered, that if this had been done it would have affected the result, and that therefore the election and the declaration thereof were void. The ordinary testified that he delivered the returns thus received to the

consolidators; and there was no intimation in the evidence of any fraud, tampering with the returns, or other wrongdoing. Apparently the letter was delivered to him at the time for the consolidation, instead of to the superintendents, and he at once, upon opening it and ascertaining what it was, delivered it to them. These things were irregularities, but they were not such as to render the election void. There is a ·marked distinction between mandatory provisions of the law in regard to elections and those which are directory to the officials in holding them. A substantial violation of mandatory provisions affects the validity of the election. A failure of strict compliance with directory provisions of the law will not generally do so, especially where there is no fraud, and where it does not appear that the result would have been otherwise if there had been an exact compliance with the law. Section 112 of the Political Code declares that "No election shall be defeated for non-compliance with the requirements of the law, if held at the proper time and place by persons qualified to hold them, if it is not shown that, by that non-compliance, the result is different from what it would have been had there been proper compliance." This section occurs in chapter 7 of the Political Code, on the subject of Contested Elections. Its spirit certainly applies with equal force to a case which is not strictly a contest of an election, but where it is sought to have the election and its result declared void and as conferring no authority upon public officials to act under it in the assessment· and collection of a tax. See *Jossey* v. *Speer,* 107 *Ga.* 828 (33 S. E. 718) ; Weil *v.* Calhoun, 25 Fed. 865 (7, 11).

In Gilleland *v.* Schuyler, 9 Kans. 569 (8), it was said that "Mere irregularities on the part of election officers, or their omission to observe some merely directory provision of the law, will not vitiate the election." In the opinion. that distinguished jurist, Judge Brewer, who was then a member of the Supreme Court of Kansas, said: "Questions affecting the purity of elections are in this country of vital importance. Upon them hangs the experiment of self-government. The problem is to secure, first, to the voter a free, untrammeled vote; and secondly, a correct record and return of the vote. It is mainly with reference to these two results that the rules for conducting elections are prescribed by the legislative power. But these rules are only means. The end is the freedom and purity of the election. To hold these rules all man-

datory, and essential to a valid election, is to subordinate substance to form, the end to the means. Yet, on the other hand, to permit a total neglect of all the requirements of the statute, and still sustain the proceedings, is to forego the lessons of experience, and invite a disregard of all those provisions which the wisdom of years has found conducive to the purity of the ballot-box. Ignorance, inadvertence, mistake, or even intentional wrong on the part of local officials, should not be permitted to disfranchise a district. Yet rules, uniformity of procedure, are as essential to secure truth and exactness in elections as in anything else. Irregularities invite and conceal fraud." He also stated, that, "Unless a fair consideration of the statute shows that the legislature intended compliance with the provision in relation to the manner to be essential to the validity of the proceedings, it is to be regarded as directory merely." In the statute of this State on the subject of consolidation of returns in such elections (Political Code, §§ 72, et seq.), it is provided that the superintendents of precincts must send all certificates and other papers of the election, including the ballots, under seal, to the county seat for consolidation, in charge of one of their number, which papers must be delivered there by 12 o'clock M. of the next day after the election. Section 73 provides that any superintendent of an election failing to discharge any duty required of him by law is liable to indictment. It does not declare that the election shall be rendered void by reason of a failure of strict compliance with the requirements of the law as to the transmission of such returns. The provision is for a criminal procedure against the officer, not for nullifying the election. We think it is quite clear that these irregularities did not authorize a court of equity to declare the election void. We thoroughly concur in the opinion of Judge Brewer that irregular conduct on the part of officials in regard to an election should neither be encouraged nor permitted. It opens too widely the door for fraud and wrongdoing which may defeat the will of the people as actually expressed at the ballot-box, but the irregularities complained of in this case were at most violations of directory provisions of the law. No fraud or wrongdoing was shown, and it did not appear that the election would have resulted otherwise if there had been strict compliance with the directions of the law. See, in this connection, Brockenbrough *v.* Cabell, 2 Bartlett (Con-

tested Elec. H. R. U. S.), 79; Richards case, 1 Clarke & Hall (Contested Elec. H. R. U. S.), 95.

10. The plaintiffs in their pleading also made other allegations as to the unconstitutionality of the act of 1905 as amended by that of 1906, but failed to specify the illegality so as to make any proper point for decision. They also alleged one or two other irregularities; but either there was a lack of evidence in regard to them, or there was no error on the part of the court in passing upon the evidence which was introduced by the two parties on the subject. Upon the whole case we can not say that the court erred in refusing to grant the interlocutory injunction prayed.

*Judgment affirmed. All the Justices concur.*