## SOUTHERN EXPRESS COMPANY v. CITY OF ATLANTA.

The act of August 17, 1903, "to provide for the deduction on franchises due counties," or municipalities, "of all amounts paid, or liable to be paid," by way of an occupation or privilege tax, by taxpayers subject to the payment of a franchise tax imposed for the benefit of a county or municipality, was not intended to apply in any instance where, prior to the adoption of that act, the authorities of a city had not only lawfully imposed but had actually collected an occupation tax laid for the fiscal year beginning July 1, 1903, upon a corporation liable for the payment of the franchise tax provided for by the act of December 17, 1902.   In the absence of an unmistakable declaration of the legislative will, a statute providing how taxes shall be assessed and collected is not to be given a retrospective operation, either as against the taxpayer or the governing authority affected thereby.

Submitted March 3,—Decided July 28, 1906.

Illegality.   Before Judge Pendleton.   Fulton superior court. May 17, 1905.

On December 28, 1903, Wm. A. Wright, as comptroller-general of Georgia, issued a fi. fa. against the Southern Express Company

to collect the principal sum of $2,609.90, claimed to be due the City of Atlanta, "under and by virtue.of the laws of the State of Georgia, providing for the taxation of corporations in this State for municipal purposes," as its tax for the year 1903 upon the company's tangible property in the city and the franchise pertaining thereto, as fixed by the returns made to the comptroller-general's office in obedience to law.   The Southern Express Company paid all the principal, interest, and costs due upon this fi. fa., with the exception of $250, after a levy thereof made on January 22, 1904. On April 4, the company filed an illegality, therein setting up the following facts and contentions: Before the issuing of the fi. fa., the company offered to pay to the tax-collector of the City of Atlanta the sum of $2,359.90 in full settlement of all taxes due for the year 1903, after deducting therefrom $250 paid as an occupation or privilege tax to the city for that year, and has since paid upon the fi. fa. a sum sufficient to reduce the amount claimed thereunder to $250.   On January 22 the fi. fa. was levied on the company's stables in the City of Atlanta, and it "is further proceeding illegally against the Southern Express Co., for the reason that the payments above made in law satisfy in full said fi. fa., [which] was issued for a greater sum than allowed by law."   The franchise tax assessed against the company in favor of the city for the year 1903 amounts to $1,886.9375, whereas the occupation or privilege tax assessed by the city against the company for that year, and paid by the company to the city prior to December 11, 1903, was $250; so that "the said fi. fa. for the franchise tax against the Southern Express Co. in favor of the City of Atlanta for the year 1903 should have been credited with the said sum of $250 paid by the Southern Express Co. to the City of Atlanta as an occupation or privilege tax."   By reason of the facts recited, "the said fi. fa. is in law fully satisfied and cancelled and no longer has any force or effect."

The City of Atlanta interposed a motion to dismiss the affidavit of illegality, based on various grounds, and, this motion being overruled by the court, filed exceptions pendente lite.   On May 17, 1905, the case came on for a hearing before a jury.   It appeared from the evidence that the Express Company, on June 25, 1903, paid to the city an occupation tax of $250, under an ordinance providing for its payment in advance "for the fiscal year ending June 30th, 1904."   After both sides had announced closed, counsel for

the city "moved the court to direct a verdict against the illegality and in favor of the tax fi. fa., on the ground that the act of the Legislature of this State approved August 17, 1903, entitled 'An act to provide for the deduction on franchises due counties, cities, towns, and villages,' etc., did not apply to taxes for the year 1903, admitting that the constitutionality of this law had already been determined adversely to its contention in this case." The act referred to declares that whenever the franchise tax provided for by the act approved December 17, 1902, "is due and payable to or for the use of any [municipality] in which the tangible property is located, and it shall appear that the [taxpayer] affected has paid, or is liable to pay, to such [municipality] for its exclusive use, within the year for which taxes on or on account of the franchises is assessed, under any agreement therefor, or under any statute, ordinance, resolution, or by-law requiring the same, any sum based upon a percentage of gross receipts or any other income, or any occupation or privilege tax or charge, or any sum of money on account of or as consideration for such franchise or privilege granted to or possessed by such [taxpayer], all amounts so paid, or liable to be paid, for the exclusive use of such [municipality], except the money paid for the *ad valorem* taxes due [it] on account of the tangible or physical property located therein, shall be deducted from the portion of the tax due such [municipality] on account of the franchise owned or possessed by such" taxpayer; but all sums due under any occupation or privilege tax or similar charge shall be paid to the municipality "entitled thereto, notwithstanding the passage of the franchise tax act hereinbefore referred to," though, when so paid, such sums "shall be considered a payment on account of, or in full, as the case may be, of the tax due such [municipality] on account of the franchise; and . . if the amount so payable is greater than the amount of the franchise tax due" the municipality, then "such payment shall be in full thereof; and if less, the difference in amount shall be paid, but no greater credit shall be allowed on account of such payment than the amount of the franchise tax due such [municipality] for the current year." Acts of 1903, pp. 18, 19.

The presiding judge granted the motion made to direct a verdict in favor of the city. Thereupon the Southern Express Company sued out a bill of exceptions in which error is assigned upon the granting of this motion; and the City of Atlanta sued out a cross-

bill, therein making complaint of the refusal of the court to dismiss the illegality.

*DuBignon & Alston,* for plaintiff in error, cited Acts 1902, p.. 37; Acts 1903, p. 18; 6 Am. & Eng. Enc. L. 939, 940, 943, 946; 53· Ala. 54; 87 *Ga.* 300; 105 Fed. 302; Black, Int. Stat. 252, 254; 16· *Ga.* 102; Civil Code, §§ 5730, 5883; 78 *Ga.* 119; 111 *Ga.* 803; 112· *Ga.* 164; 103 *Ga.* 503, and cit.; 109 *Ga.* 373; 8 *Ga.* 23; 30 *Ga.* 845;. 28 Conn. 97; 13 *Ga.* 1; 51 L. R. A. 917; 8 Cyc. 1021; 54 *Ga.* 36;. 91 *Ga.* 522; 99 *Ga.* 462; Senate Jour. 1902, p. 482; 107 *Ga.* 606; 116 *Ga.* 245; Judson on Taxation, §§ 438, 444, 446, 450, 454, 459;. 183 U. S. 471; 97 *Ga.* 114; 47 L. R. A. 802; 57 L. R. A. 922; 142· U. S. 339; 179 U. S. 89; Cooley on Tax. 1094; 120 *Ga.* 429..

*James L. Mayson* and *William P. Hill,* contra, cited Civil Code,. § 5730; Cooley on Tax (3d ed.) 1133, 1139; *Ga. R.* 109/63, 80;. 120/429; 49/151; 103/686; 105/466; 113/462; 89/639; 60/597; 62/645; 64/225; 115/189; 10 Mun. Cas. 373; 12 Am. & Eng. Enc. L. 277, 280, 285, 287; 21 Ib. 804; 21 Wall. 492; 3 How. (U. S.) 133; 48 Am. Dec. 531.

EVANS, J. (After stating the facts.) In a recent case before: this court it was held that the general policy of this State with reference to the enactment of its revenue laws is to fix the rate of taxation in advance of the year of the collection of the tax. *Georgia R. R. & Bkg. Co.* v. *Hutchinson,* 125 *Ga.* 762. In that case a. taxpayer was resisting the collection of a tax, for the reason that the law which imposed it was approved on August 23, after the taxpayer's return had been made under a statute requiring returns for taxation to be made by the first day of May. This court held that it was not to be presumed, in the absence of an express legislative declaration, that the tax should be retrospective in its operation and impose a new burden upon the taxpayer for the current year.. The converse of the proposition is presented by the record now before us. Before the enactment of the law permitting the deduction of a privilege or occupation tax from the amount raised by a property tax imposed on franchises, the complaining taxpayer had paid. its occupation tax for the fiscal year beginning July 1, 1903. The act of the General Assembly, imposing a tax on franchises (Acts of 1902, p. 37), required every person, partnership, or corporation,. holding or owning and exercising any franchise within the State of Georgia, to make a special sworn return to the comptroller-general.

of the value of such franchise, on or before the first day of May
in each and every year. Before the passage of the act of August 17,
1903, providing for a deduction from the franchise tax of an occu-
pation tax which operated as an additional burden on the taxpayer,
the City of Atlanta had laid and collected the occupation tax upon
the complaining express company, which presumably had prior to
the first day of May made return to the comptroller-general of its
franchise for taxation for the benefit of the municipality. A busi-
nesslike policy would require that a municipal corporation, in the
assessment of its taxes for the fiscal year, should fix the rate with a
view to raising revenue sufficient to meet the estimated expendi-
tures of the city government, and at the same time equalizing, as
far as possible, the burden imposed upon different classes of tax-
payers. This estimate would necessarily have to be based in part
upon the valuation of all tangible property subject to municipal
tax, upon the revenue to be derived from license fees and privilege
or occupation taxes, and upon the probable fund which the city
could expect to receive through the comptroller-general on account
of taxes imposed for its benefit on franchises under the act of 1902.
In the absence of an express declaration of the legislative will that
the act of 1903 should be retrospective, it is not to be presumed that
our General Assembly intended that act to have the effect of reduc-
ing the city's revenue in such a way as to place it in a situation
where it could not meet its necessary current expenses or govern-
mental obligations. To give to the act a retroactive operation, and
to hold that the city was liable to account to a taxpayer for an
occupation tax legitimately levied and actually collected before that
act was passed, might seriously disarrange the fiscal affairs of the
municipality and lead to much confusion and embarrassment.

The act does not by its terms fairly indicate that it was to have
a retroactive effect. The third section thereof, which provides that
an occupation tax, when paid, shall be considered a payment on the
franchise tax, in whole or in part, has reference to the payment of
an occupation tax after the passage of that act but in advance of
the collection of the franchise tax falling due in December, and not
to the payment of an occupation tax laid and paid prior to the
date of the act. In other words, it was doubtless contemplated by
the General Assembly that the act should, after it became effective,
apply to such taxes laid on occupations as might subsequently be

imposed by municipalities, but not to any privilege tax previously imposed by a city, collected by it and, perhaps, fully expended before the governing authorities had any intimation of the change in legislative policy brought about by the act of 1903. The trial judge rightly construed the act to be prospective rather than retrospective; and the direction of a verdict in favor of the city was proper under the undisputed facts of the case.

*Judgment on main bill of exceptions affirmed; cross-bill of exceptions dismissed. All the Justices concur, except Fish, C. J., absent.*