### CHAMLEE *v.* DAVIS, ordinary.

### KAY & BROTHER *v.* HILES, mayor, *et al.*

### McDONALD *et al. v.* NEEL *et al.*, commissioners, *et al.*

1. The act approved December 11, 1901, "to provide for the establishment and maintenance of a dispensary in the City of Rome," etc., required only a majority of the votes actually cast at the election therein provided for to be in favor of the establishment of the dispensary in order to put that act in operation.

2. An order passed by the ordinary, certifying that from the returns of the election held in pursuance of this act "'For Dispensary' received 1459 votes; 'Against Dispensary' received 1190 votes," substantially complied with the

requirement in the thirteenth section of the act, that the ordinary shall declare the result of the election ; and the effect of such an order was to put the act in operation.

3. Since under the provisions of this act neither the City of Rome nor the County of Floyd can incur any debt or liability, the act does not violate any of the constitutional provisions embraced in the Civil Code, §§ 5891, 5893.

4. This act does not, because it prohibits the sale of spirituous, malt, vinous, and other intoxicating liquors "otherwise than by said dispensary" and, as a consequence, deprives the municipal authorities of that city of their pre-existing power to grant licenses for the sale of such liquors, violate any of the constitutional provisions embraced in the Civil Code, §§ 5732, 5771, 5778.

5. A mere failure on the part of registrars to observe legal requirements will not vitiate an election, unless it appears affirmatively that "the result is different from what it would have been had there been proper compliance." Allegations designed to complain of such irregularities should distinctly set forth specific facts, and not mere general conclusions.

6. Every question of any material consequence arising in these three cases is disposed of either by the rulings announced above or by decisions of this court heretofore rendered in other cases.

Argued March 25,—Decided March 26, 1902.

Petitions for injunction.   Before Judge Henry.   Floyd superior court.   February 19, 25, March 7, 1902.

*J. Branham, Denny & Harris, W. H. Ennis, R. L. Chamlee, W. T. Kelly,* and *C. E. Davis,* for plaintiffs.

*C. N. Featherston, Halsted Smith, G. A. H. Harris, W. J. Neel, G. E. Maddox,* and *Dean & Dean,* for defendants.

SIMMONS, C. J.   In December, 1901, the General Assembly passed an act establishing a dispensary for the City of Rome in the County of Floyd.   This act directed that an election should be held on February 18, 1902, to determine whether or not the dispensary act should go into effect.   The election was duly held, the votes for the dispensary being 1459 and those against it 1190.   After the election, Chamlee filed an equitable petition to enjoin the ordinary of the county from declaring the result of the election.   In this petition various allegations were made which will be considered later.   The judge refused to grant a restraining order, and Chamlee excepted.   Kay & Brother filed a petition against the municipal and county officers, to enjoin them from electing dispensary commissioners.   The judge refused to grant a restraining order, and the petitioners excepted.   Subsequently McDonald and others, as citizens and taxpayers, filed a petition against the dispensary commissioners who had been elected, and against the City of Rome and

the County of Floyd, to enjoin them from establishing a dispensary or making any contract or debt in the establishment thereof. The judge granted the injunction as prayed against the City of Rome and the County of Floyd, but refused it as to the dispensary commissioners. The petitioners excepted on the ground that the court erred in not granting the injunction as to all of the defendants. These three cases were argued together here, and, inasmuch as they contain substantially the same allegations, will be considered together in this opinion.

1. One of the contentions of the plaintiffs in error is that the act was not ratified by the requisite majority of the voters of the county. It was alleged in the petitions that there were about six thousand voters in Floyd county, of whom 4600 were registered, and that as the act had to be ratified by a majority of the voters and received but 1459 votes, it failed to receive the votes of a majority of the voters of the county. In the argument here much stress was laid on this point, and it was insisted on by counsel as a reason for the reversal of the judgments of the court refusing the injunctions. The only possible doubt that has arisen in our minds as to the correctness of the judgment sought to be reversed arose from the earnestness with which this point was insisted on by able counsel. After reading the act carefully, we have no doubt at all of the correctness of the ruling of the trial judge on this point. In our opinion the act does not require a majority either of the whole number of those entitled to vote in Floyd county or of the entire number of registered voters. It was insisted that the first part of section 13 of the act clearly showed that a majority of the eligible voters of the county should ratify the act before it went into effect. It seems to us that this portion of the act shows that the legislature did not intend this. The act declares that it " shall not go into effect until ratified by a majority of the voters of said county of Floyd at an election held for that purpose." We think this clearly means a majority of those voting at that particular election. The act does not prescribe that it must receive the votes of a majority of the electors or qualified voters of the county, but seems to mean a majority of the votes cast. If this part of the section left any doubt as to this matter, it would be resolved by the last part of the section, which declares that "if a majority of the ballots cast shall be for dispensary, thereupon this act shall go into effect." As

before remarked, we think the first clause of the section meant a majority of those voting. The last part of the section clears up any doubt that may have been left by the first. The cases cited and relied upon by counsel for the plaintiffs in error were upon different acts, and clauses of the constitution, the latter requiring that in certain elections the votes of two thirds of the *qualified* voters of the county shall be necessary. For a discussion of the difference between the common-law rule and the constitutional rule in regard to majorities, see the opinion of Mr. Justice Little in *Wells* v. *Ragsdale*, 102 *Ga.* 53.

2. Another exception taken to the judgment of the court below is, that the judge held that the ordinary had declared the result of the election, when in truth and in fact no such declaration had been made, and that under the act it was necessary that the ordinary should consolidate the returns and declare the result. This contention is not borne out by the record, which shows that on the day after the election the ordinary passed an order certifying that "'For Dispensary' received 1459 votes; 'Against Dispensary' received 1190 votes." It is true he did not make the calculation to arrive at the majority and distinctly announce the majority, but we think his order informed the public of the result of the election and was a substantial compliance with the requirements of the act.

3. Among the other assignments of error is one based on the contention that under the act the City of Rome or the County of Floyd might be held responsible for any debt of the dispensary commissioners, and that the act was, therefore, violative of the constitutional provisions embraced in the Civil Code, §§ 5891, 5893. We have carefully read the act, and find that it contains absolutely nothing which would authorize the authorities of either the city or the county to incur any debt on account of the dispensary, or to become responsible for any debt which the dispensary commissioners might create. The act allows the commissioners to borrow money and make purchases on credit, and pledges the proceeds of the sales and the stock on hand for the payment of the debts thus created. Persons who lend money to the commissioners of the dispensary, or extend credit to them, do so with full knowledge of the means of payment and must look to these means for payment. In no sense would the city or county be liable, or "in honor bound," to pay any debts incurred by the commissioners. It seems to us that these contentions are fanciful, if not frivolous.

4. The exceptions also raise the questions, (1) whether the act is unconstitutional as special legislation in a case for which provision has been made by an existing general law; (2) whether it is unconstitutional because it refers to more than one subject-matter or contains matter different from what is expressed in its title; and (3) whether the act is a local one and unconstitutional because there was no publication of notice of the intention to apply for the same, as required by the constitution. In the case of *Plumb* v. *Christie*, 103 *Ga.* 686, it was ruled by this court that an act providing for the sale of intoxicating liquors by means of a dispensary under the control of the government does not violate the constitutional provisions embraced in the Civil Code, § 5732. In the present case the question is raised as to whether this act violates this constitutional provision by making the sale by means of the dispensary exclusive. We think it does not. The very object and end of the dispensary is to abolish barrooms and other places of like character, and to confine the sale of intoxicating liquors to a dispensary which is under governmental supervision and control. If, under *Plumb* v. *Christie*, the dispensary may be constitutionally established, we think the legislature may constitutionally prohibit the sale of intoxicating liquors otherwise than by such dispensary. Without such a prohibition the act would be useless, and its end would be defeated simultaneously with its adoption. Further than this, we think that no provision is made by the general local option law under which such a regulation of the liquor traffic could be secured. Under that law a community may secure absolute prohibition or may have a sale by private concerns, but it can not secure an exclusive sale by a dispensary under governmental supervision and control. This last is the object of the dispensary act, and can not be secured under any existing general law. For these reasons we think that the act in question is not unconstitutional as being a special act in a case for which provision has been made by an existing general law.

Nor do we think the act contains matter different from what is expressed in its title, or refers to more than one subject-matter. It was argued that it was unconstitutional on these grounds, because its result was to alter and amend the charter of the City of Rome and to revoke its right to grant licenses for the sale of liquors. While such may be the effect or result of the act, we are clear that

there was no necessity for a reference to these things in the title, which, as it stood, sufficiently indicated the purpose and scope of the act. The purpose of the act was to establish a dispensary in the County of Floyd for the exclusive sale of intoxicating liquors, and its repeal of conflicting laws and regulations did not enlarge the number of matters to which it related. Every effective law repeals such laws as may be in conflict with it, but it does not for that reason relate to additional subject-matters.

Nor can this court declare the act unconstitutional because there was no publication of notice as required in the Civil Code, § 5778. Conceding that this was a local act and that such notice should have been published, this court must presume that the requisite publication was made, unless the contrary appears from the journals of the legislature. *Peed.* v. *McCrary*, 94 *Ga.* 487.

5. It was also claimed that the registration books for the election were closed too early. The act provided for an election "under the same rules and regulations as are now prescribed by the law for the holding of elections for the members of the General Assembly of this State." It was contended, however, that the time for closing the registration was governed by the acts of 1894 and 1897, relating to registration for special elections, and that registration should have been allowed until fifteen days before the election. As matter of fact no one was allowed to vote who had not registered twenty days before the election, as is the rule in elections for members of the General Assembly. Even if registration ought to have been allowed for this election until fifteen days before the election, under the Political Code, § 112, the non-compliance with the law in this regard will not vitiate the election, unless it is shown that the result is different from what it would have been had the law been complied with. The allegations of the plaintiffs as to this matter are not sufficiently specific. While it is stated generally that many voters were thus prevented from voting against the dispensary and that they were of sufficient number to have changed the result, not enough is stated to enable a court to say that this conclusion is true. In the first place some of these alleged qualified voters seem to have become cognizant of the ruling of the registrars and to have made no effort to register or to vote. What proportion of the votes which would have changed the result is made up of these does not appear, and we think that no legal complaint

can be made of their not voting. The record does not show the name of a single voter who would have voted against the dispensary if his vote had not been rejected or refused. The allegations as to this matter were in other respects insufficient and general. There is not enough to demand a decision of the question sought to be presented. *Collins* v. *Huff*, 63 *Ga.* 207; *Jossey* v. *Speer*, 107 *Ga.* 828; *Cole* v. *McClendon*, 109 *Ga.* 183.

6. The rulings above announced dispose of every question of any material consequence arising in any of these cases, except such as are so well settled by former decisions of this court that it would be useless to discuss them here.

*Judgment in each case affirmed. All the Justices concurring, except Little and Lewis, JJ., absent.*