### HAWTHORNE *et al. v.* TURKEY CREEK SCHOOL DISTRICT *et al.*

1. Where two or more local school districts are consolidated, it is not necessary that the word "consolidated" appear as a part of the name selected for the consolidated district; and it is proper for a proceeding to validate bonds to be conducted in the name of the district as fixed by the proper school authorities.
2. Under the facts of this case the list of voters was prepared in substantial compliance with law, and was furnished to the managers of the election provided for the issuance of bonds, by the tax-collector as required by law.
3. A female more than 21 years of age, by the provisions of the act of 1923, properly construed, is not required to pay poll-tax except for those years in which she may be registered as a voter.

No. 5008.   JUNE 29, 1926.

Validation of school bonds.   Before Judge Custer.   Grady superior court.   June 20, 1925.

The State of Georgia, through B. C. Gardner, solicitor-general of the Albany Circuit, filed a petition against the Turkey Creek School District of Grady County, and its board of trustees, seek-

Elections, 20 C. J. p. 76, n. 42; p. 78, n. 93 New.
Schools and School Districts, 35 Cyc. p. 850, n. 94; p. 990, n. 86; p. 992, n. 91; p. 995, n. 30 New.
Statutes, 36 Cyc. p. 1029, n. 25; p. 1044, n. 2.

ing to validate certain school bonds alleged to have been voted by said district. The defendants filed an answer in which they admitted the allegations of the petition, and joined in the prayer that the bonds be validated. Eric Hawthorne and O. L. Chester, citizens and taxpayers of said district, filed an intervention, which was allowed by the court, objecting to the validation of said bonds. As reasons why the said bonds should not be validated, the intervenors set forth that the validation proceedings were being had in the name of Turkey Creek School District instead of the true corporate name of said district, to wit, Turkey Creek Consolidated School District; that no certified list of voters qualified to vote in the election was furnished to the election managers by the tax-collector, as required by law; that thirteen females voted at said election in favor of bonds, that said females registered during the month of March, 1925, that they were residents of said county on January 1, 1922, and eligible to vote, that each of them had paid no poll tax for the years 1922, 1923, or 1924; and that without the votes of said thirteen females two thirds of the voters at said election did not vote in favor of · the issuance of bonds. "Intervenors show that sec. 3 and 4 of the act of 1922, page 21, is unconstitutional and violates art. 3, sec. 7, par. 8, of the constitution, in that the matter included therein in sec. 3 and 4 is not covered by the title of said act, said provision being no law or ordinance shall contain matter different from what is expressed in the title thereof."

As recited in the bill of exceptions, "the following constitutes a brief statement of all the evidence adduced on the trial of said case: That heretofore said county was duly laid off into school districts in accordance with the requirements of law. That certain districts thus laid off were consolidated by the board of education in June, 1924, into a consolidated district to be known as 'Turkey Creek School District.' That local tax will be levied in said consolidated school district in 1925, for school purposes. That J. W. Sanders, J. R. Baggett, and Clayton Ulmer are the duly qualified trustees of said school district, as alleged in paragraph 2 of the petition. That a petition for an election, as alleged in paragraph 3, was presented, and an election called in said school district to be held on April 22, 1925, as alleged in paragraphs 3 and 4 of the petition. Due notice by publication and the posting of

three notices, as alleged in paragraphs 5, 6, and 7 of the petition, was made. That the election was held on the 22nd day of April, 1925, and resulted in 57 votes being cast in favor of bonds and 26 against; there being 91 votes in said district, as shown by the registration list hereinafter referred to. That the results of said election were canvassed and declared by the board of trustees as stated in paragraph 9, and due notice given to the solicitor-general as alleged in paragraph 10. That the allegations of the taxable property in said district as alleged in paragraph 11 of the petition are true. That the managers at said election were in possession of a list of voters which was prepared as follows: The trustees of Turkey Creek School District employed Honorable J. J. Gainey as attorney to assist in the bond proceeding. Said trustees came together and made a list containing 105 names, and being parties whom the said trustees considered probably entitled to vote in the bond election. This list of names was made because there was no other way for the tax-collector to know who were residents of said districts, and was by the said Gainey, on the instruction of said trustees, turned over to the tax-collector of said county, who went over said list and struck from said list the names of 12 parties who, the said tax-collector found, were not registered voters entitled to participate in said election. After which the said list of voters was returned, by the said tax-collector, to the said J. J. Gainey, for the purpose of the said Gainey preparing two voters' lists for the said election, one to be filed in the clerk's office and another to be furnished to the said trustees, and accompanied said list with two certificates made out in duplicate form, one being by the said tax-collector and bearing date of April 11, 1925, certifying 'that the attached list of names is a correct list of registered qualified voters of the Turkey Creek School District for the bond election to be held in said district April 22, 1925, according to the names of citizens of said district furnished by the board of trustees of said district;' the other being a certificate signed by the registrars of said county and bearing date of March 31, 1925, certifying, 'that we have gone over the above and foregoing voters' list, and hereby certify that the names appearing on said list are qualified to vote in the bond election to be held in the Turkey Creek District, April 22, 1925.' The certificates had not been at-

tached to any list when they were turned over to Mr. Gainey by the tax-collector. The list of voters originally prepared by the trustees, after being corrected by the tax-collector, contained 93 names. From this list as corrected by the tax-collector Mr. Gainey prepared a list of voters in duplicate form, as aforesaid, containing the names of 90 parties whose names appeared on the first list, and adding thereto the name of one party whose name did not appear on the first list, that is, the list furnished to the tax-collector by the trustees. The changes made by Mr. Gainey were authorized by the tax-collector verbally, at least ten days before the election, and said lists were left with said Gainey for said trustees. When the lists were prepared by Mr. Gainey one of the certificates furnished by the tax-collector and one of the certificates furnished by the registrars was attached to each list, one list being filed with the clerk of the superior court on the 20th day of April, 1925, and the other delivered by said Gainey to the trustees some three or four days prior to the election. That 13 females who voted at said election and who voted in favor of bonds, and whose names appeared on the list of voters referred to above, had registered during the month of March, 1925; that each of said females were residents of Grady County on the first day of January, 1922, and eligible to vote, each at that time being over the age of twenty-one years and having resided in said county for more than twelve months prior thereto. That each of said parties at the time they voted in said bond election had paid no poll-tax for the years 1922, 1923, 1924. That none of said parties had previously registered or voted. That without the votes of said females two thirds of the voters voting in said election did not vote in favor of bonds, and that with the votes of said females two thirds of those voting at said election voted in favor of bonds. That the intervenors were citizens and taxpayers of said school district."

S. P. Cain, for plaintiffs in error.

B. C. Gardner, solicitor-general, and Jesse J. Gainey, contra.

RUSSELL, C. J. (After stating the foregoing facts.) On April 22, 1925, an election was held to determine whether the Turkey Creek School District should issue certain bonds. The registration list showed 95 voters entitled to vote in this election; and according to the canvass of the votes cast, there were 57 votes

30

in favor of the issuance of bonds and 26 votes against bonds. As appears from the statement of facts, the proposed issue of bonds was validated by the judge of the superior court, and the plaintiffs in error excepted to the judgment of validation. We agree to the summary of counsel for the plaintiffs in error of the exceptions and grounds of objection to the judgment of validation. "1. Because the validation proceedings were had in the name of Turkey Creek District instead of Turkey Creek Consolidated School District. 2. Because no certified list was furnished the managers at said election by the tax-collector, as required by law." 3. Because 13 voters in said election and who voted in favor of bonds were disqualified to vote, and without said illegal votes the required majority was not received. It was admitted that 13 female voters voted who were residents of the county on January 1, 1922, and who had never paid any poll tax.

1. It is our opinion that the first objection urged against the validation of the bonds is not of sufficient force to warrant a reversal of the judgment of the trial court. As appears from the record, the board of education selected the name Turkey Creek School District after the consolidation of certain schools. It is true that one of the schools embraced in the consolidation was known as the Turkey Creek School and the local district in which it was located was known as the Turkey Creek School District, but there is no requirement that when two or more school districts are consolidated the word "consolidated" shall appear as a part of the name selected for the consolidated district. The name Turkey Creek School District having been selected as the name of the district created by consolidation of several local school districts, it was proper that the proceeding for validation should be conducted in the name of the Turkey Creek School District, and the bonds issued in the name of that district.

2. It is contended that the election as to bonds was invalid, because the certified list of voters which was used in the election was not prepared or issued as required by law, nor furnished to the managers of the election in accordance with law. By section 143 of the school law (Acts 1919, p. 346), when a bond election is called in a school district "the ordinary shall furnish a certified list of registered voters in such school district . . to the managers of the election, thirty days before such election is held."

This requirement was so changed by the act of 1921 (Acts 1921, p. 221) as that the list is required to be furnished only ten days before the election, and the list is to be furnished by the tax-collector instead of the ordinary. The requirement then is that a certified list of the qualified voters shall be furnished by the tax-collector to the managers of the election ten days before the election is held. The testimony shows that the trustees made up a list of those they considered entitled to vote in the district, and gave it to the tax-collector, and that the attorney for the trustees assisted in the preparation of the certified list, and that when the tax-collector had received the list of names furnished him by the trustees, he furnished the certificate (not attached to this list) to the attorney for the school trustees, to be attached to the registration list of voters. The list of voters which the tax-collector certified was to be copied by the attorney at the request of the tax-collector, before the certificate was attached thereto. The tax-collector himself took the list furnished to him by the trustees, went over it, and struck from it such names as he thought did not belong there; and therefore the voters entitled to registration were selected by him, and not by the trustees of the school district, the managers of the election, or the attorney for the trustees. In the circumstances the individual who happened to be attorney for the trustees was an amanuensis or assistant of the tax-collector, and the copying of the list and the attaching of the formal certificate may therefore be said to have been the act of the tax-collector. It does not appear from the record that the list of names carried to the tax-collector, which he corrected by striking off certain names, did not conform to the registration list prepared by the registrars. It may be that the names which appeared to have been stricken by the tax-collector were stricken because such did not appear upon the registration list. In any event, since in local school district elections the school trustees are themselves the managers of the election, and it appears that their attorney was supplied with a list of the voters ten days prior to the election, it can well be said that the list was furnished to the managers in the sense in which that term is used in the statute; and as no harm seems to have resulted from a more technical compliance with duties directory in their nature, it can not be said

that the election should be set aside, if all of those who voted were qualified electors.

3. For this reason, the controlling question in the case is whether the votes of 13 electors who were females, and all of whom voted in favor of bonds, should be excluded because of their failure to pay poll-tax or to register prior to the election. If, by reason of the failure to pay poll-tax in 1922, 1923, and 1924 these females were disqualified to vote, then two thirds of the voters voting in the election did not cast their ballots in favor of bonds, and the bond issue should not have been validated. On the other hand, if under the facts appearing in the record the 13 females were not required to pay poll-tax or register in 1922, 1923, or 1924 and not required to register in 1922 or 1923, then they were entitled to vote, their votes were properly counted in the result, and the requisite majority voted for the issuance of the bonds in question.

The nineteenth amendment to the constitution of the United States is self-executing, and immediately upon its becoming operative all females were entitled to vote, provided they complied with the regulations surrounding voter's qualifications in the State of their residence. This amendment became operative on August 26, 1920. At that time there was no law in Georgia requiring females to pay poll-tax. *Brown* v. *Atlanta,* 152 *Ga.* 283 (109 S. E. 666). Females in this State, who were otherwise qualified to vote, might have voted at any time between August 26, 1920, and December 20, 1922, without paying poll-tax prior to such voting. *Davis* v. *Warde,* 155 *Ga.* 748 (118 S. E. 378). Thus there was no poll-tax required of females prior to December of 1922. In 1921 the legislature passed an act, known as the general tax act (Acts 1921, p. 38), and by section 2 of said act each and every individual inhabitant of this State between the ages of 21 and 60 years was required to pay a poll-tax of $1. It was provided in this act that none of its terms should become operative until January 1, 1922. That part of said act levying a poll-tax superseded section 917 of the Civil Code of 1910, under which poll-tax was levied prior to the passage of the act of 1921, supra. In 1922 another act was passed with reference to levying poll-tax upon females, the same being an amendment to paragraph 2 of the general tax act of 1921, supra, which amendment provided that this tax shall not

"be required or demanded of female inhabitants of this State who do not register for voting; provided that all females are required to pay all back poll-tax due from the time they shall become eligible to vote to the date of their registration." Section 3 of this act reads as follows: "Provided, further, that those female inhabitants who have heretofore registered may avail themselves of the benefits of this act, and be relieved of said tax, by applying to the tax-collector of their county, and have their names stricken from said registration book; and it shall be the duty of said tax-collector to issue to such females who may apply to have their names so stricken a certificate, which certificate shall bear date when issued, and shall give the name of such females, and state in substance that said named female has been stricken from the registration book, and is no longer a registered voter for that year." By section 4 of this act it is "Provided, further, that those female inhabitants whose names have at any time been stricken from said registration book, or those who have never registered, may register for the purpose of voting, and shall be required to pay a poll-tax for the year in which they may so register and shall be required to pay a poll-tax for every succeeding year so long as their names remain on said registration book." Section 5 contains the usual repealing clause. While the various provisions of this act are somewhat contradictory, we think the real intention of the General Assembly can be gathered from section 4 of the act, quoted above, which provides that a female voter shall be required to pay a poll-tax for the year in which she may register, and annually thereafter, unless such female avails herself of the opportunity afforded by section 3 of said act and has her name stricken from the registration list as therein provided. But counsel for the plaintiffs in error contends that the act of 1922 is unconstitutional, because sections 3 and·4 of said act contain matter not referred to in the title of the act. The title of the act is as follows: "An act to amend an act entitled an act to annually, in addition to the ad valorem tax on real and personal property as now required by law, to levy and collect a tax for the support of the State Government and public institutions; for educational purposes in instructing children in the elementary branches of an English education only; to pay the interest on the public debt; to pay maimed and indigent Confederate soldiers and widows of Con-

federate soldiers such amounts as are allowed them by law; to pay the public debt when due; *to require all females to pay all back poll-tax due from the time they shall become eligible to vote to the date of their registration;* to prescribe what persons, corporations, professions, business and property are liable to taxation," etc.    We think the title of the act is sufficiently broad to cover the provisions of sections 3 and 4 of the act.    Both sections are germane to the purpose of the act as expressed in the title, to wit, to amend an act "to annually . . levy and collect a tax . ."    However, we are unable to find an act entitled as above quoted.    The title of the act of 1921, supra, is identical with that quoted, with the exception of the words which we have placed in italics.    But without deciding the effect of this addition inserted in the title of the act upon the validity of same, we think the question at issue concerning the legality of the votes of the thirteen females in the present case is settled by the general tax act of 1923.    Acts Extraordinary Session 1923, p. 21.    Section 2 of this act levies a poll-tax "upon each and every inhabitant of this State between the ages of twenty-one and sixty years; . .    provided this shall not be  . .    required or demanded of female inhabitants of this State who do not register for voting."    Paragraph 1(a) of said act is identical in its terms with section 3 of the act of 1922, set forth above.    That is the present law of force in this State in regard to requiring females to pay poll-tax; for all prior laws in conflict with the act of 1923, supra, were repealed thereby.    Thus females who register at any time are not required to pay poll-tax for the years prior to such registration; and it is our opinion that the females who voted in the bond election now under review were eligible to vote in the election without paying such tax.    So far as the objections urged are concerned, the bonds were regularly and legally voted and were properly validated; and the judgment of the lower court will be    *Affirmed. All the Justices. concur.*