McCLUNEY *et al. v.* STEMBRIDGE, Ordinary, *et al.*

No. 16909.   January 10, 1950.

*W. S. Edwards* and *Erwin Sibley*, for plaintiffs.
*Marion Ennis*, for defendants.

ALMAND, Justice. ■ It is contended that no legal petition was filed with the ordinary on which she had jurisdiction to lawfully compute the necessary requirement that the petition contain 35% of the registered voters of the county. It is contended that the total number of names appearing on the list of registered voters filed with the clerk of the superior court, being a list of those entitled to vote in the general election of 1948, was 7822, and that the ordinary, in calculating the number as constituting a legal petition, accepted the signatures of 661 persons whose names appeared on separate but identical postcards, and separate and identical letters, and also a petition of several sheets of paper purporting to bear the signatures of 2501 voters, which totaled 3162. It was charged that these 661 purported signatures were illegally counted, and when deducted from the total of

3162, only 2501 signatures were left, and therefore a total of 299 signatures less than the 35% required by law.

The ordinary, in calling the election, certified that there was filed with her on September 10, 1949, a petition signed by more than 35% of the registered voters of Baldwin County qualified to vote in the general election immediately preceding, requesting the call of a special election to submit to the qualified voters of the county the question of whether or·not a majority of the voters voting at said special election are in favor of taxing, legalizing, and controlling alcoholic beverages and liquors. The petitioners do not assert that any of the persons whose names appeared on the cards or letters were not registered voters, nor do they contend that there were any duplicates. The petition does not set out whether or not the cards or letters contained the same language that appeared on the several sheets, but does refer to the separate letters and cards as constituting a part of the petition which the ordinary certified that she had received, and which she certified contained more than 35% of the registered qualified voters as required by law.

The calling of a special election by the ordinary, as required by statute, determined prima facie the proper performance of her duties, among them being the certification of the requisite number petitioning for the call of an election as required by her, and the burden is on the complaining party to overcome this presumption. *Vornberg* v. *Dunn*, 143 *Ga.* 111 (84 S. E. 370). "Where the ordinary is required by statute to call a special election upon the presentation of a petition containing the number and class of voters required by the statute, the filing of several separate, identical petitions, which were circulated and signed in the several militia districts of the county, amounts to the presentation of a 'petition,' and complies with the statute." *Sanders* v. *Mason*, 197 *Ga.* 522 (4) (29 S. E. 2d, 780). So, where there were several circulated petitions seeking to call a special election to nullify a previously voted authority for the sale of alcoholic beverages and liquors within the county, but the majority of names were signed to individual petitions asking in legal terms that the election be called, each petition signed by one individual registered voter, and all of the petitions were pasted in one consolidated petition and presented to the ordinary, such consoli-

dated petition was held to be sufficient in form to meet the requirements of the statute; there being evidence to show that there was a sufficient number of signatures to bring the total to 35% as required. *Williams* v. *Gould,* 203 *Ga.* 96 (45 S. E. 2d, 218). There being no allegations sufficient to rebut the presumption raised by the certificate of the ordinary calling the election, there is no merit in this ground of the plaintiffs' attack.

A request is made that we review and overrule *Sanders* v. *Mason,* and *Williams* v. *Gould,* supra. The *Williams* case was not a full-bench decision, but the *Sanders* case was by a unanimous court. In so far as the rulings therein are pertinent to this case, we think that they are sound, and decline to review the *Williams* case, or to overrule the *Sanders* case.

█ It is asserted that the election was illegal and void because the ordinary herself was one of those who signed as an individual the petition requesting the call of the election, and therefore she was disqualified in law and equity as ordinary to pass upon the petition. The only authority cited in support of this ground is Code (Ann.) § 24-102 as amended; the portion of the section relied on being: "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission shall sit in any cause or proceeding in which he is pecuniarily interested, nor preside, act, or serve, in any case or matter, when such judge is related by consanguinity or affinity to any party interested in the result of the case or matter." The defendant ordinary was not disqualified, because the petition does not show that she was pecuniarily interested in the matter before her. This court, in *Riner* v. *Flanders,* 173 *Ga.* 43 (159 S. E. 693), held: "Prejudice, bias, or prejudgment of the case on the part of the ordinary, not based on interest, relationship, or any other ground named in the statute, exhibition of partisan feeling, or unnecessary expression of opinion upon the justness or merits of the controversy, are, as a general rule, not assignable as a ground of disqualification." P. 45 (4). In *Elliott* v. *Hipp,* 134 *Ga.* 844 (4) (68 S. E. 736), it was held that an allegation that a judge was active in aiding one faction of a political party to gain control of the politics of a county in order to further his own political purposes and interests, did not disqualify him from passing upon an application to enjoin the

registrars from filing a registration list alleged to have been prepared by them with the names of certain persons opposing the faction illegally left off the list for the purpose of gaining control of the party's politics. The allegations of the petition before us are insufficient to show that the ordinary was disqualified from calling and holding the special election.

It is alleged that the purported secret ballots furnished to the voters at this election were illegal, in that they did not have an adequate description or letter printed thereon so that the ballots at no two polling places in the county would bear the same designation, as required by Code § 34-1903, which section, by the act approved February 25, 1949 (Ga. L. 1949, p. 1291), was made to apply to special elections. This section, as rendered applicable to special elections by the act of 1949, makes it the duty of the ordinary, in providing the official ballots, to have attached to the top thereof a sheet which may be easily detached, with blank space for the name of the voter, and printed thereon a letter of the alphabet or some other designation or number, with the same designation or number printed on the ballot itself, "but a different designation or letter shall be printed on the ballots used at the various polling places, so that the ballots at no two polling places in the same county shall bear the same designation, and so that all the ballots shall be so arranged that the printed designation and number on the stub and on the ballot shall appear on the reverse side of the ballot." It is contended that the failure of the ordinary to comply with this requirement materially and harmfully affected the plaintiffs' right to contest the result of the election, by cutting them off from a statutory remedy to attack the managerial act of holding the election. There is no claim or contention that any person voted more than once, nor that the claimed irregularities were fraudulent, nor that, if there had been a different designation or letter on the ballots as required by statute, the result of the election would have been different.

Code § 34-3101 provides that no election shall be defeated for noncompliance with the requirements of law, if the election is held at the proper time and place by persons qualified to hold the same, unless it be shown that a different result would have been had, had there been proper compliance. Where, in an

election for submission of a proposition to the voters, forms of ballot are prescribed by the legislature, a ballot cast therein, which is in substantial accord with the statutory form and which clearly expresses the intention of the voter on the proposition voted on, will not be rejected or disregarded because it is not in the exact statutory words. *DuPre* v. *Cotton*, 134 *Ga.* 316 (67 S. E. 876). See also *Thacker* v. *Morris*, 196 *Ga.* 167 (26 S. E. 2d, 329). From the allegations of the petition, we cannot say that the ballots were not substantially in the form prescribed by the legislature, and the allegations of noncompliance were further insufficient to show that a different result would have occurred if there had been proper compliance.

■ It is next contended that the notice of the election published by the ordinary did not designate the legally qualified voters, nor set out the places where the voters should cast their ballots, nor designate a legal list of voters. The call for the election as issued by the ordinary gave notice that on October 5, 1949, "An election will be held in all the voting precincts of Baldwin County, Georgia, at which time there will be submitted to the qualified voters of said county for their determination the question whether they are in favor of taxing, legalizing and controlling alcoholic beverages and liquors and the manufacture, sale and distribution of same in Baldwin County, Georgia"; also that the voting polls would be open in all of the voting precincts of said county between the hours of 7 o'clock a. m. and 6 o'clock p. m., and that those qualified to vote at said election shall be determined in all respects in accordance with the laws governing elections for members of the General Assembly of Georgia. This notice was in substantial accord with the statute (Ga. L. Ex. Sess. 1937-38, pp. 103, 105-106, Code, Ann. Supp., §§ 58-1002—58-1008 inclusive), providing for special elections such as the one here involved. That act provides in section 4 that "there shall be submitted to the voters of the county who are qualified to vote for members of the General Assembly the question of whether the manufacture, sale and distribution of alcoholic beverages and liquors in the county shall be permitted or prohibited." Code (Ann. Supp.), § 58-1004. The same section of said act also provides that "such election shall be held according to the rules and regulations governing elec-

tions for members of the General Assembly." Code (Ann. Supp.), § 58-1005. We are of the opinion that the notice in this case substantially complied with the requirements of the statute as to the manner in which elections are held for members of the General Assembly, as provided in Code § 34-1301.

■ It is further contended that there was not furnished to the election managers holding the election a legal list of qualified voters. In support of this contention, it is alleged: that the voters list furnished was not one supplied by the board of registrars under the provisions of the Voters' Registration Act of 1949 (Ga. L. 1949, p. 1204); but that the ordinary furnished the election managers a carbon copy of the voters list furnished by the former registration board and certified by the clerk of the superior court; that such list had not been purged by the new board of registrars since their appointment on March 15, 1949; and that no supplemental list was made by them as provided and required by sections 5 and 31 of said act.

We do not find any merit in this contention. The plaintiffs alleged in paragraph 14 of their petition that the registration list used in the election was the list that had been used at the general election immediately preceding this election, and paragraph 7 alleged that the list furnished to the election managers was a carbon copy of one purporting to have been prepared by the board of registrars on December 23, 1947, dated July 8, 1948, signed by the registrars on August 8, 1948, and certified by the clerk of the superior court on September 3, 1948.

Under the provisions of said act providing for special elections of this character, the only registration list that could have been used was the list used at the last general election held in November, 1948, which was the list prepared by the board of registrars that existed at the time of the appointment of a new board under the Voters' Registration Act of 1949, and the claim that the ordinary should have used a list prepared by the new board of registrars is not meritorious, for the reason that said Voters' Registration Act, in providing for the appointment of a new board of registrars and the manner in which every person, whether previously registered or not, shall be required to register for all future elections, requires in section 3 that the first registration list under said act shall be prepared in the year 1950,

and section 5 provides that at any special election held before the first list shall have been prepared and filed, the general election list of qualified voters for the year 1948, in conjunction with a supplemental list prepared in accordance with the special-election provisions of the act, shall be used; and this same section provides that the registrars shall have authority to purge the old list in any supplemental list made by them. It is contended that, under the provisions of section 31 of said act, it is the duty of the board of registrars, five days after the call of a special election, to cease taking applications from persons desiring to register or qualify to vote thereafter, and proceed to examine into the qualification of an applicant in the same manner as therein provided with reference to an applicant desiring to qualify to vote in general elections; and that the registrars should prepare a supplemental list showing the names of the additional persons who are entitled to vote at such special election,. and that the registrars are further authorized to purge the list of registered voters prepared for the last general election.

It is apparent from a reading of section 31, in connection with sections 3 and 5 of the act, that the provision of section 31—that it should be the duty of the registrars, upon call of a special election, to furnish the managers of such election two lists, one composed of names of voters entitled to vote by reason of their registration and qualification at the last general election, and the other made up of those entitled to vote by reason of their subsequent registration—is operative only after the new board of registrars appointed under the act of 1949 have completed their permanent registration list for the year 1950, and that the provision of section 31, that the registrars shall furnish the two lists to managers of special elections, has application to special elections called and held after the permanent registration list has been made up for 1950; and the purpose of section 5 of the act was to take care of special elections held between the time the new board of registrars was appointed and the time the permanent registration list was furnished in 1950; and, as to any special election held during this period, it was the intent that the ordinary holding a special election would use the list of registered voters that was used in the last general election preceding the date of the special election, and that the new board

of registrars from their date of appointment would have authority to take in new registrations and purge the old registration list as well as the supplemental list, and furnish to the proper authorities such supplemental list as well as the list purged from the old voters list.

It is recited in the petition that the registration list used by the ordinary contained interlineations of names, erasures, and additions and corrections. It is further alleged that the list was not purged by the new board of registrars, and no supplemental list was made by them as provided and required by sections 5 and 31 of the Voters' Registration Act. From all that appears from these allegations, the erasures, additions, and corrections on the list may have been made by the new board of registrars, it not being alleged that such alterations were made by any person not authorized to do so. The allegation that no supplemental list was made by the new board does not allege any fact or reason why the board was required to make a supplemental list. There are no allegations of fact that, if the board of registrars had purged the old or new list, or had furnished a supplemental list, a result different from the one obtained would have occurred. This court, in *Chamlee* v. *Davis*, 115 *Ga.* 266 (5) (41 S. E. 691), held: "A mere failure on the part of registrars to observe legal requirements will not vitiate an election, unless it appears affirmatively that 'the result is different from what it would have been had there been proper compliance.' Allegations designed to complain of such irregularities should distinctly set forth specific facts, and not mere general conclusions." Even if the conclusion of the petitioners, which is not supported by specific allegations of fact, that the registration lists were not compiled strictly in conformity to the law, be true, "we can not say that the omission here referred to was such as to invalidate the entire election and authorize the plaintiffs to treat it as a nullity or as conferring no power on the local officers to act under the due declaration of the result." *Coleman* v. *Board of Education of Emanuel*, 131 *Ga.* 643, 654 (63 S. E. 41).

■ Lastly, it is contended that the court should have enjoined the board of county commissioners from paying the claims of three persons, who were alleged to have circulated a petition calling for the election and claimed that the commissioners

should pay for such services as legal claims against the county; and also that the court should have held as not subject to demurrer that part of the petition which sought to enjoin payment by the commissioners to the publisher of the official gazette who had published a duplicate notice of call for an election, it being contended that the additional notice was an unnecessary expense. There are no allegations in the petition as amended which claim that either of these parties had demanded that the commissioners pay these claims, or that the commissioners had done anything which recognized these claims as legal liabilities. There is not even an allegation that the commissioners have threatened to recognize these claims. These allegations are totally insufficient to authorize a court of equity to enjoin the board of commissioners from paying out county funds on claims that are only anticipatory and that may never be presented. "A petition against a county treasurer, to enjoin the payment of an item alleged to be illegal, is insufficient, where it fails to show that the treasurer is threatening to pay the item or will do so unless enjoined." *Wall* v. *Humphries,* 179 *Ga.* 148 (2) (175 S. E. 477).

■ It appears from the amendment to the petition that, after the filing of the original petition, the election was had, and official returns have been consolidated and the result shown; 1271 votes being cast in favor of, and 904 votes against, legalizing and controlling the sale of liquor in Baldwin County. We are of the opinion that none of the attacks on the calling of the election or the holding of the same are meritorious. The trial judge did not err in sustaining the demurrer of the defendants and dismissing the petition as amended.

*Judgment affirmed. All the Justices concur. Duckworth, C. J., concurs specially.*

DUCKWORTH, Chief Justice, concurring specially. I concur specially, as I do not agree with what is said in division 2 of the opinion. Although the facts in this case required the exercise of no discretion on the part of the ordinary, and for that reason she was not disqualified, yet it is my opinion that the fundamentals of simple justice would require any judicial officer, when called upon to exercise discretion, to disqualify if he is a party to, interested in, or partial toward either side of the matter in controversy.