### 33195. ROBINSON *et al. v.* STATE OF GEORGIA AND CAMDEN COUNTY SCHOOL DISTRICT.

DECIDED OCTOBER 28, 1950.

*Cowart & Cowart,* for plaintiffs in error.

*W. Glenn Thomas, Solicitor-General, Benjamin R. Martin Jr., Gowen, Conyers & Dickey,* contra.

SUTTON, C. J. This was a bond validation proceeding in Camden Superior Court for the issuance of bonds for $230,000 by Camden County School District. J. T. Robinson, S. C. Sheffield Jr., J. B. Simpson, Joseph W. Gillete, and C. N. Seals Sr., filed an intervention, alleging that they are residents of the 1606 G. M. District, known as the Kingsland District of Camden County, Georgia, and alleging various reasons why the bonds

should not be validated. The State and Camden County School district demurred generally and specially to this intervention. The intervention was amended and the demurrers were renewed and additional grounds were added. In a single order and judgment the judge of the superior court sustained the demurrers on each and every ground thereof and dismissed the intervention, and then confirmed and validated the bonds. It is recited in this order that there was a hearing on the demurrers to the intervention, and an inspection of the proceedings and a consideration of the evidence in respect to the validation. The intervenors excepted, assigning error on this judgment, giving as the sole reason therefor that said demurrers should have been overruled.

According to the petition 1456 votes were cast in favor of the issuance of the school bonds, and 873 votes were cast against the issuance of the same, in an election held for the purpose of determining whether or not school bonds should be issued, and the total number of votes cast in favor of the issuance of school bonds was more than a majority of the registered qualified voters of Camden County School District voting at the election. The validity of the election was attacked in the intervention, as amended, for the following reasons:

"Paragraph 2: (a) That the supplemental list of voters used in said election was not prepared according to law.

"(b) That the registrations from which said list was made were not taken according to law.

"(c) That registration cards were not kept in the office of the tax collector as required by law but that a member of the board of registrars took large numbers of said cards to St. Marys and Kingsland in said district where large numbers of registrations were accepted. That during a period of a few hours some 175 registrations were taken in St. Marys and that during a period of less than two hours more than 100 registrations were taken at Kingsland and if the 1949 act had been complied with it would be impossible to take so many registrations in such periods of time. That the registration cards were not kept in the office of the tax collector as provided by law, but were kept in the office of the County Commissioners of Camden County, Georgia.

"(d)   That no order was passed by the registrars on the great majority of the applications for registrations and up to the present week such orders had not been entered.

"(e)   That the supplemental list of registered voters was not filed in the office of the clerk of the superior court within the time required by law.   That the election in question was called by the Board of Education of Camden County, Georgia on January 10th, 1950.   That supplemental list was filed in the office of the Clerk of the Superior Court of Camden County, Georgia on January 25th, 1950.

"(f)   That the old registration list was not properly purged.

"Paragraph 3:  (a) That the voters were not required to sign the voters book before receiving the ballot.

"(b)   That persons unknown to intervenors were permitted to solicit votes of persons unknown to intervenors within the polling places and adjacent thereto.

"(c)   That numerous persons unknown to intervenors who were interested in the outcome of the election, other than the managers, were allowed in the area within ten feet from the booths.

"(d)   That many persons unknown to intervenors were permitted to vote and secure assistance in the preparation of their ballots without having made the affidavit required by law.

"(e)   That the polling places were not roped off nor any area around the same designated wherein votes could not be solicited.

"Paragraph 5:   Intervenors show that large numbers of voters were permitted to vote outside of their own precinct, and specifically, at the courthouse in Woodbine, Georgia.   That a great number of these voters came from the Browntown or 32nd District of Camden County.   That the voters were solicited to come to Woodbine to vote by letters and circulars, and that trucks were sent to pick up such voters; that a precinct was open in said 32nd District during this election, and intervenors show that French McKinnon hauled these voters to the polls at Woodbine, Georgia.   That the following persons who were residents of the Browntown District were permitted to vote in Woodbine: Hattie Green, French McKinnon, Rachel Atwater, Carrie Baldwin, Venezuela Jacobs, Clyde Murray, Walter Wilkinson, Peter Gibbs and Birtie Strickland, and others unknown to intervenors.

"Paragraph 6: That the election precincts in the 32nd or Browntown District, and in the Kingsland or 1606 District, and the St. Marys or 20th District, were not established as provided by law.

"That the election at Browntown was held on the front porch of Mathew Brown's residence; that the election at Kingsland was held in the old Kingsland Bank building, and the election at St. Marys was held in the old county jail building; that none of these places had been designated by the order of the Ordinary of Camden County, Georgia as provided by law.

"Paragraph 7: That a number of ballots were taken out of the polling places and the voters were permitted to vote them away from the polling place. Among these were Mrs. Alice Conner, Robert Baker, C. A. Brown, Mrs. Leonard McCullough, Jack Thigpen, Mrs. Alvin Brassel, and one ———— Nightingale, wife of Oliver Nightingale, and others unknown to intervenors."

In addition to the above matters pertaining to the election the intervention contained additional objections, in paragraph 4, as follows:

"Intervenors further show that the Kingsland District had previously voted bonds in their district for the erection of a school building and that in fairness and equity they should not have been included in this election and their property should not be subject to taxation for the payment of these bonds. That it would have been fair and equitable for the county board of education to have eliminated the Kingsland District from participating in the election and from being made liable for the payment of the bonds in as much as the Kingsland District had bonded itself and otherwise financed its own school system."

The demurrers of the State and Camden County School District consisted of a general demurrer, the contention in this respect, in substance, being that the intervention contained nothing authorizing the court to refuse the validation, and special demurrers to the various paragraphs and subparagraphs of the intervention on the grounds that the same were conclusions of the pleader, unsupported by allegations of fact, that it was not shown that the matters alleged would have changed the result of the election, that certain of the allegations were indefinite, and for other reasons.

1. "No election shall be defeated for noncompliance with the requirements of the law, if held at the proper time and place by persons qualified to hold it, unless it is shown that, by such noncompliance, the result is different from what it would have been had there been proper compliance." Code, § 34-3101. It has been held that "the true rule is that the election will be avoided when, and only when, there is injected into it the insurmountable uncertainty incident to the rejection of the votes of electors in sufficient numbers to overcome the apparent and announced result of the election, if they had all voted against the result reached." *Briscoe* v. *Between Consolidated School District,* 171 *Ga.* 820, 825 (156 S. E. 654). " 'Where an election has been fairly and honestly conducted, it will not thereafter be invalidated by mere irregularities which are not shown to have affected the result. All provisions of the election laws are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election they should be held directory only, in support of the result, unless of a character to obstruct the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.' " *Hastings* v. *Wilson,* 181 *Ga.* 305, 307 (182 S. E. 375). The above principles apply generally to the issues here involved as to the validity of the election.

2. The allegations of subparagraph 2a, that the supplemental list of voters was not prepared according to law; of subparagraph 2b, that the registration from which the list was made was not taken according to law; and of subparagraph 2f, that the old registration list was not properly purged, unsupported by specific allegations, are mere general conclusions of the pleader, and were properly stricken when attacked by special demurrer for this reason. "To allege that such a list as the law requires was not furnished is a conclusion of the pleader." *Moon* v. *Seymour,* 182 *Ga.* 702 (2) (186 S. E. 744). "A mere failure on the part of registrars to observe legal requirements will not vitiate an election, unless it appears affirmatively that the 'result is different from what it would have been had there been proper

compliance.' [Code, § 34-3101.] Allegations designed to complain of such irregularities should distinctly set forth specific facts, and not mere general conclusions." *Chamlee* v. *Davis*, 115 *Ga.* 266(5) (41 S. E. 691).

3. The allegations of subparagraphs 2c, 2d, and 2e, pertaining to acts or omissions on the part of the registrars, merely show certain irregularities, without affirmatively showing that there would have been a different result in the election if there had been a proper compliance with the requirements of law by the registrars, and are not matters which will vitiate the election. The principles of law ruled in the foregoing divisions of this opinion in this respect are applicable. Consequently, these allegations were properly stricken when attacked by demurrer. Furthermore, this court is unaware of any legal requirement that registrations shall be taken only at the place where registration cards are to be kept, as was provided by the act of 1949 (Ga. L. 1949, pp. 1204, 1209, Code, Temp. Ann. Supp., § 34-113), or of any requirement as to how much time shall be spent in registering each applicant under the provisions of the aforesaid act; and, under the ruling in *Cole* v. *McClendon*, 109 *Ga.* 183(3) (34 S. E. 384), allegations merely bringing in question the irregularity of placing certain names on a registration list, without showing that these names could not have in any event been placed on the list, are not sufficient; and, under the rulings in *Lumpkin* v. *State*, 73 *Ga. App.* 229, 235(4) (36 S. E. 2d, 123), and *Hawthorne* v. *Turkey Creek School District*, 162 *Ga.* 462, 467 (134 S. E. 103), a provision of law as to when a voter's list shall be furnished, such as was provided by the act of 1949 (Ga. L. 1949, pp. 1204, 1221, Code, Temp. Ann. Supp., § 34-131), is merely directory, and will not void an election without a showing that the result was affected thereby.

4. The allegations of subparagraphs 3a, 3b, 3c, 3d, and 3e, in regard to signing a voter's book, soliciting votes at the polling places, rendering assistance to voters, and not roping off an area around the polling places where votes could not be solicited, even if in violation of law (see Code, §§ 34-1902, 34-1909; Ga. L. 1941, pp. 429 et seq., Code, Ann. Supp., §§ 34-1918, 34-1919, 34-1920; Ga. L. 1943, pp. 290 et seq., Code, Ann. Supp., § 34-1905; Ga. L. 1949, pp. 1291 et seq., §§ 1 and 2-C, Code, Temp. Ann. Supp.,

§ 34-1917) merely show irregularities in the conduct of the election without showing that the result was affected thereby, and fail to show any matter which would void the election. In addition to the authorities cited in the preceding divisions of this opinion, see *Brumby* v. *City of Marietta*, 132 *Ga.* 408 (64 S. E. 321). The ruling here made is not contrary to that made in *Moon* v. *Seymour*, 182 *Ga.* 702 (1) (supra), for in that case the ruling of the court was predicated upon an absolute and complete disregard of what is commonly known as the Australian ballot system in holding the election.

5. The allegations of paragraph 5 of the intervention show that nine named persons and others unknown to intervenors voted at the courthouse at Woodbine, although there was a place to vote in their own district, the Browntown or 32nd District of Camden County. It does not appear that this district is a district in which the voting precinct is inside an incorporated town. Under the provisions of the act of 1949 (Ga. L. 1949, pp. 1204, 1223, sec. 40, Code, Temp. Ann. Supp., § 34-140), any person may vote at the precinct at the courthouse whose name appears "on the lists for one of the militia districts in which the voting precinct is situated outside of an incorporated town" by taking an oath that he has not voted elsewhere. The provisions of the act of 1949 in this respect are not new, the identical language as to voting at the courthouse having been a part of the law of this State for many years. See Code, § 34-802, based on the act of 1894 (Ga. L. 1894, p. 120). The allegations of paragraph 5 of the intervention fail to show any violation of law or any irregularity in the conduct of the election and were properly stricken when attacked by demurrer.

6. It is alleged in paragraph 6 that the election precincts in the Browntown or 32nd District, in the Kingsland or 1606th District, and in the St. Marys or 29th District, were not established as provided by law, in that the places named therein as having been used for the election had not been so designated by the Ordinary of Camden County, as provided by law. The authority of the ordinary in such a matter is provided in Code § 23-701 (4). It is not shown that any voter was ignorant of the place where the election was held, or was misled or failed to vote on account of this irregularity, if such an irregularity did

exist. Paragraph 6 of the intervention was properly stricken on demurrer. See *Coleman* v. *Board of Education,* 131 *Ga.* 643, 652 (8) (63 S. E. 41).

7. In paragraph 7 of the intervention it is alleged that seven named voters and others unknown to intervenors were permitted to vote away from the polling place. Code § 34-1905, provides that "No voter shall at any time take or remove any ticket or ballot from the polling place." However, under the controlling principles already announced in this opinion, the allegations of this paragraph do not show any irregularity which would serve to vitiate or change the result of the election, and the same were properly stricken on demurrer.

8. It is alleged in paragraph 4 of the intervention that in fairness and equity the Kingsland District should not have been included in the election, inasmuch as the Kingsland District had already bonded itself and financed its school system. Under the provisions of the Constitution of this State, art. 8, sec. 5, par. 1 (Code, Ann., § 2-6801) each county is composed of one school district, exclusive of independent school systems already in existence, and such district is confined to the control and management of a county board of education. In the same connection, see Code (Ann. Supp.), § 32-1101. "The county boards of education shall have the power to purchase, lease, or rent school sites; build, repair or rent schoolhouses, . . and make all arrangements necessary to the efficient operation of the schools. The said boards are invested with the title, care and custody of all schoolhouses or other property, with power to control the same in such manner as they think will best serve the interests of the common schools; and when, in the opinion of the board, any schoolhouse site has become unnecessary or inconvenient, they may sell the same in the name of the county board of education . . In respect to the building of schoolhouses, the said board of education may provide for the same by a tax on all property located in the county and outside the territorial limits of any independent school system." Code (Ann. Supp.), § 32-909. The issuance of bonds on a county-wide basis for improving the schools of Camden County, as provided by law, was a matter within the jurisdiction of the Camden County Board of Education in the exercise of its administrative power over the Camden

County School District. The allegations of paragraph 4 of the intervention to the effect that it was unfair and inequitable to issue bonds on a county-wide basis and to include the Kingsland district show no lawful reason why the bonds should not be validated, and were properly stricken on demurrer. See and compare *Fordham* v. *Harrell*, 197 *Ga.* 135 (28 S. E. 2d, 463), and cases cited therein.

9. Considering the allegations of the intervention separately and as a whole, no facts are alleged therein showing any legal reason why the bonds in question should not be validated. Accordingly, the judge of the superior court did not err in dismissing the intervention on demurrer.

*Judgment affirmed. Felton and Worrill, JJ., concur.*