A05A1309. DeLeGAL v. BURCH.
(616 SE2d 485)

ELLINGTON, Judge.

The Wayne County Superior Court dismissed Fraysee A. De-LeGal's challenge to a special election on bonded debt finding that

---

[7] *Dye v. State*, 266 Ga. App. 825, 829 (2) (c) (598 SE2d 95) (2004).

DeLeGal's complaint failed to state a claim. DeLeGal appeals, contending the election was invalid and the results void because the election was held without proper notice.[1] For the following reasons, we affirm.

The trial court may sustain a motion to dismiss for failure to state a claim when

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Footnote omitted.) *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 207-208 (1) (541 SE2d 33) (2000). "In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." Id. at 208. Our review of the undisputed facts and of the trial court's application of the law to those facts is de novo. *Sidwell v. Sidwell*, 237 Ga. App. 716, 717 (1) (515 SE2d 634) (1999). So viewed, the record reveals the following.

On July 12, 2004, the Board of Commissioners of Wayne County adopted a resolution calling for a bond election to be held in Wayne County on September 21, 2004. On September 21, the county's electorate voted on the question of whether the county shall issue general obligation bonds for the purpose of funding hospital construction. The voters approved the bond issue by a vote of 1,752 to 1,553.

Prior to the election, the county notified the public of the election by placing advertisements in *The Press Sentinel*, the legal organ of the county, on August 18, August 25, September 1, September 8, and September 15, 2004. In accordance with Georgia law[2] each advertisement informed the voters of the following: (1) the date of the

---

[1] DeLeGal filed this case in the Supreme Court of Georgia and that court transferred the case here. In transferring the case, the Supreme Court held that the case was neither a case arising from an election contest nor an equity case. It concluded that "the only issue for appellate review is whether the trial court erred in finding that the notice of election was sufficient under OCGA § 36-82-1 (b)."

[2] OCGA § 21-2-45.1 (a), pertaining to special elections for bonded debt, provides:
The governing authority of a county, municipality, or political subdivision desiring to incur bonded debt in accordance with the provisions of the Constitution of Georgia shall call a special election to be held on a certain day for the purpose of submitting to the electorate the question of whether such bonded debt shall be incurred. The governing authority shall publish notice of such election once a week for a period of four weeks immediately preceding the day of the election in a newspaper which publishes the sheriff's advertisements for the county containing

election, (2) the question submitted ("Shall Wayne County issue general obligation bonds in principal amount not to exceed $15,335,000 to pay a portion of the cost of acquiring, constructing and equipping a new hospital in Wayne County?"), (3) the principal amount of bonds to be issued, (4) the purpose of the bonds, (5) the maximum rate of interest, and (6) the amount of principal to be paid in each year during the life of the bonds. Although this information was present in each advertisement, the August 18 advertisement contained an error. In the third paragraph of that advertisement, a paragraph which pertained to principal payments, the text provided: "The bonds shall be [a] general obligation debt of the School District." The rest of the notice, which exceeded eight paragraphs, referred to the bond issuer as "Wayne County" or "the County."

DeLeGal saw the error in the first announcement and notified the county, which immediately changed "School District" to "County" in the next advertisement. On Friday, September 17, 2004, two business days before the election, DeLeGal sued Christine Burch, the acting Commissioner of Elections, based upon the typographical error in the August 18 advertisement. He filed a pleading styled "Temporary Restraining Order Against Special Bond Election or Rule Void Results of Special Election." The record contains no evidence demonstrating that DeLeGal requested a hearing seeking to enjoin

---

all or the largest part of the area of the county, municipality, or political subdivision involved. Such notice shall specify (1) the date of the election and the question to be submitted to the electorate, and (2) the principal amount of bonds to be issued, the purpose for which such bonds are to be issued, the interest rate or rates such bonds are to bear, and the amount of principal to be paid in each year during the life of such bonds; provided, however, that the governing authority, in lieu of specifying the rate or rates of interest which such bonds are to bear, may specify in the notice that such bonds when issued will bear interest at a rate not exceeding a maximum per annum rate of interest as stated in the notice or that, in the event such bonds are to bear different rates of interest for different maturity dates, none of such rates will exceed the maximum rates stated in the notice.

OCGA § 36-82-1 (b), pertaining to elections for bonded debt, provides:

The officers charged with levying taxes, contracting debts, and the like for the county, municipal corporation, or political subdivision shall give notice for not less than 30 days immediately preceding the day of the election in the newspaper in which sheriff's advertisements for the county are published, notifying the qualified voters that on the day named an election will be held to determine the question of whether bonds shall be issued by the county, municipal corporation, or political subdivision. The notice shall specify the principal amount of the bonds to be issued, the purpose for which the bonds are issued, the interest rate or rates which such bonds are to bear, and the amount of principal to be paid in each year during the life of the bonds. The notice, in the discretion of the issuing body, in lieu of specifying the rate or rates of interest which the bonds are to bear, may state that the bonds, when issued, will bear interest at a rate not exceeding a maximum per annum rate of interest specified in the election notice or, in the event the bonds are to bear different rates of interest for different maturity dates, that none of such rates will exceed the maximum rate specified in the election notice.

the election prior to it being held. On September 30, 2004, Burch answered and moved to dismiss, contending the August 18 advertisement, when read as a whole and considered in context with all the other notices filed, was legally sufficient.

In its order granting the motion to dismiss, the superior court concluded that all of the advertisements, including the August 18 advertisement, provided legally sufficient notice of the election and met all of the requirements of OCGA §§ 36-82-1 (b) and 21-2-45.1. The court concluded that the reference to "School District" in the first advertisement was "a scrivener's error," "a mere clerical error which is inconsistent with the remainder of the published notice." "A reading of the entire notice . . . make[s] it obvious that the bonds, when issued, would be a debt of the county." Finally, the court stated that because the clerical error in the August 18 advertisement did not place "the result of the election in doubt," DeLeGal's motion failed to state a claim upon which relief could be granted. It is with this last portion of the court's order that DeLeGal takes particular issue.

DeLeGal argues that the court erred in its order by failing to distinguish between the law applicable to "pre-election" and "post-election" challenges. He contends that in a challenge brought prior to an election, the failure to comply with any provision of the election law will invalidate the election, regardless of whether the failure placed the election results in doubt. We disagree.

First, DeLeGal's suit, though filed before the election, did not result in a pre-election challenge. DeLeGal's complaint sought injunctive relief *or* an order declaring "[v]oid the results of the [election]." Although the complaint included a request for injunctive relief, DeLeGal failed to seek a hearing on the temporary restraining order prior to the election or to do anything to preserve his claim for injunctive relief. Also, DeLeGal's complaint failed to set forth, as required by OCGA § 9-11-65 (b) (1), specific facts averring that absent a temporary restraining order he would suffer immediate and irreparable injury, loss or damage before the opposing party could be heard. Thus, the superior court lacked jurisdiction to grant an ex parte order temporarily restraining the election. *Stewart v. McLean*, 252 Ga. 455 (314 SE2d 439) (1984). DeLeGal, therefore, by his failure to preserve or pursue his injunctive remedies, elected to pursue only a post-election challenge.

Second, DeLeGal mistakenly assumes the court found the notice insufficient, that it constituted an "irregularity." The court concluded that the August 18 advertisement *fully complied* with the applicable statutes. The clerical error did not render the August 18 notice noncomplying because, considered in context, it would not mislead the reader about any of those items for which notice was statutorily required. The notice was also timely because it informed the voters of

everything the law required within the requisite 30-day period. We agree with the superior court's legal conclusion that notice was sufficient under OCGA §§ 21-2-45.1 (a) and 36-82-1 (b).

Third, even if the clerical error could be considered an "irregularity" in the election process, it would not, as a matter of law, warrant setting aside the election. It has long been the law that an irregularity in an election notice provides no basis to contest the election results unless the contestant presents evidence showing that the irregularity is "sufficient to change or place in doubt the result." OCGA § 21-2-522 (3); *Irvin v. Gregory*, 86 Ga. 605, 611 (13 SE 120) (1891). Moreover,

> [a]ll provisions of the election laws are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election they should be held directory only, in support of the result, *unless of a character to obstruct the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.*

(Citation omitted; emphasis supplied.) *Robinson v. State*, 82 Ga. App. 584, 588 (1) (61 SE2d 773) (1950). The typographical error at issue in this post-election contest was not, as a matter of law, of such a character that it ran afoul of this principle. See *Irvin v. Gregory*, 86 Ga. at 610 ("To suffer this election to be overthrown upon so slight a ground as the casual omission of one insertion of the notice in the newspaper, would be to sacrifice substance to mere form."). Therefore, the allegations of the complaint are such that the claimant would not be entitled to relief under any state of provable facts asserted and the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. For these reasons, the trial court did not err in dismissing DeLeGal's complaint.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 21, 2005.

*Mills & Chasteen, Ben B. Mills, Jr.*, for appellant.
*Smith & Phelps, Robert B. Smith, Oliver, Maner & Gray, Thomas S. Gray, Jr.*, for appellee.